Wayne NELSON and Anthony Manos, Plaintiffs–Appellants,

v.

William MURPHY, Acting Director of the Department of Mental Health and Developmental Disabilities, et al., Defendants–Appellees.

No. 94–1764.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 25, 1994.

Decided Jan. 4, 1995.

Opinion Denying Rehearing March 13, 1995.

Mark J. Heyrman, Adam Goodman, law student (argued), Julia A. Bronson, Mandel Legal Aid Clinic, Chicago, IL, for plaintiffs-appellants.

Gary M. Griffin, Asst. Atty. Gen., Robert McFarland, Jan E. Hughes, Asst. Atty. Gen. (argued), Civ. Appeals Div., Chicago, IL, for defendants-appellees.

Before CUDAHY, ESCHBACH, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

When a jury in Illinois returns a verdict of not guilty by reason of insanity, the criminal court commits the defendant for a mental examination. 730 ILCS 5/5–2–4(a). If after receiving the results of this examination the judge decides that the person is mentally ill and dangerous, the judge must order the person confined "in a secure setting". *Ibid.* "Such defendants placed in a secure setting shall not be permitted outside the facility's housing unit unless escorted". *Ibid.* Notwithstanding this command, a court may permit a confined person to move freely on and off the facility's grounds. Every 60 days the director of the mental health facility "shall file a treatment plan with the court. . . .

Such plan may . . . include unsupervised on-grounds privileges, off-grounds privileges (with or without escort . . .), home visits and participation in work programs". 730 ILCS 5/5–2–4(b).

Wayne Nelson and Anthony Manos were found not guilty by reason of insanity. Nelson had been charged with murder, Manos with attempted murder. Each was found mentally ill and dangerous, ordered confined "in a secure setting", and sent to the Elgin Mental Health Center. On the recommendation of a treatment plan, both received passes for on- and off-grounds travel. In December 1988 the criminal court approved a treatment plan that permitted Nelson to move on-grounds from one activity to another, and to leave the grounds on supervised travel twice a month (but not to visit his home). In January 1988 the criminal court approved a treatment plan that gave Manos similar on-grounds privileges, and in September 1989 the court granted Manos's motion for supervised off-grounds travel (but he, too, was not to visit his home).

In May 1990 two persons confined at Elgin escaped while traveling on off-grounds passes. William Murphy, then the director at Elgin, concluded that security needed improvement. He canceled all off-grounds passes and curtailed unescorted movement within the grounds while the facility constructed a fence. Treatment plans duly filed with the criminal court described this change. Neither Nelson nor Manos complained to the state court—although other inmates did, and some of them obtained judicial relief. Instead, in December 1990 Nelson and Manos filed suit in federal court under 42 U.S.C. § 1983, contending that the reduction of their privileges violated the due process clause because it was a response to a breach of security rather than an outgrowth of an individual evaluation. See *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). Litigation is proper under § 1983, rather than 28 U.S.C. § 2254, because the scope of passes may be understood as a condition of confinement. See *Graham v. Broglin*, 922 F.2d 379 (7th Cir. 1991) (request for placement in a work release program may be adjudicated under § 1983).

Plaintiffs believe that the due process clause forbids any decisions applicable across the board to all inmates. They sought in-

junctive relief and damages on behalf of a class of all persons confined at Elgin after acquittal by reason of insanity. The fence was completed in March 1991, but on-grounds unsupervised travel has not been fully restored; most inmates' movement is supervised. In March 1994 the district court dismissed the suit without prejudice to its renewal in state court, concluding that abstention is appropriate. 1994 WL 86011, 1994 U.S.Dist. LEXIS 2896.

■ "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." Fed.R.Civ.P. 23(c)(1). This case was active on the district court's docket for three years and four months, but despite two motions for class certification and full briefing by the parties the court never decided whether it could be maintained as a class action. The court did not give a reason for this inaction, and we do not perceive one. Prompt decision one way or the other is imperative not only so that the parties know whose interests are at issue but also so that representative plaintiffs with live claims may be substituted. For a properly certified class action survives the mootness of the original representative's claims, while an individual action must be dismissed in identical circumstances. Compare *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), with *Board of School Commissioners v. Jacobs*, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975). Both plaintiffs have been released from confinement at Elgin—Manos in December 1990 and Nelson in April 1993. See *People v. Nelson*, 244 Ill.App.3d 356, 185 Ill.Dec. 143, 614 N.E.2d 277 (1st Dist.1993). The district court did not mention these releases, which moot plaintiffs' request for injunctive relief. Although each plaintiff is subject to recommitment for future misbehavior, that possibility was held insufficient to satisfy Article III in *Weinstein v. Bradford*, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975), which concluded that release on parole moots a dispute about the procedures the state uses to make parole decisions. See also *Murphy v. Hunt*, 455 U.S. 478, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982). A decision on class certification could permit other inmates to carry on the quest for injunctive relief, *Parole Commission v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980), but two considerations counsel against a remand. First, the small size of the putative class (fewer than 85 at all pertinent times) coupled with the fact that each inmate was entitled to (and several received) individual consideration in state court suggests that the conditions for class certification have not been met. Second, Nelson and Manos have a live dispute with the defendants about damages, and our resolution of this dispute shows that class certification would be imprudent.

■ The district court abstained under the principles of *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). *Burford* held that a federal court should abstain when the federal case depends on the resolution of unsettled questions of state law within the competence of an administrative agency—in *Burford* itself, an agency regulating the oil industry. Plaintiffs observe that directives affecting passes from a single state mental facility are some distance from a statewide program of oil and gas regulation, and they add that nothing in this case depends on the resolution of an unsettled question of state law. The district court conceded all this but thought *Burford* applicable because the rules governing the treatment of mentally ill persons are important to the state. Although Illinois does not handle these matters through an agency with state-wide power, or even a court of specialized jurisdiction, the district judge thought that the criminal court supervising each person's custody specializes in the details of that case: "While the Illinois circuit courts can hardly be said to [be] courts of technical specialization, in this instance they are courts of individual specialization."

■ Plaintiffs see this as proof that *Burford* cannot apply. No agency, no *Burford* abstention. This oversimplifies matters. Five years ago the Court recapitulated the *Burford* doctrine:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the

"exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*New Orleans Public Service, Inc. v. New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 2514, 105 L.Ed.2d 298 (1989) (*NOPSI* ) (citations omitted). This language suggests that *Burford* is limited as plaintiffs propose. Yet two years ago the Court suggested that the *Burford* doctrine might justify abstention in a domestic relations case otherwise within the diversity jurisdiction, when a state court is available to resolve difficult questions of state law. *Ankenbrandt v. Richards,* —— U.S. ——, ——, 112 S.Ct. 2206, 2216, 119 L.Ed.2d 468 (1992). If *Burford* abstention might be apt in a domestic-relations dispute, an agency's role cannot be essential.

Still, it is hard to fit this dispute within *Burford.* Its outcome does not depend on the answer to some unsettled issue of state law. And far from using a single agency or specialized court to "establish a coherent policy with respect to a matter of substantial public concern", Illinois has divided responsibility among the many criminal courts throughout the state. A decade ago, when a state judge issued an injunction governing the handling of escape risks at mental institutions, the Supreme Court of Illinois reversed on the ground that each judge supervising a person in custody after an insanity acquittal is entitled to consider the subject independently. *People v. Roush,* 101 Ill.2d 355, 78 Ill.Dec. 349, 462 N.E.2d 468 (1984). *Roush* establishes that Illinois does not seek a uniform policy toward all persons situated similarly to plaintiffs, which makes the *Burford* doctrine inapplicable.

■ In the district court defendants relied not only on *Burford* but also on *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The district court thought *Younger* irrelevant "because plaintiffs do not seek to enjoin any state court proceeding. It is true plaintiffs seek injunctive relief, but against Illinois' Department of Mental Health, not the Illinois courts." Yet *Younger* itself concerned a request for injunctive relief against the adverse litigant, not against a court or judge. The principle of *Younger* is that a party to a state proceed-

ing affecting important governmental interests must resolve the dispute in the state's preferred tribunal. *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986); *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). A federal court that simply ignores the pending state case, and resolves the question independently, damages the state interest a little less than a court that enjoins the pending state proceeding to boot, but in either case the principal objection is to the transfer of adjudication from the original state forum to the federal forum. See *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (treating an injunction against execution of a money judgment rendered by a state court as no better than an injunction against the continuation of the state proceedings).

■ Illinois requires the criminal court to supervise the confinement of persons found not guilty by reason of insanity. Both Nelson and Manos were active litigants in state court. As we have recounted, Nelson was especially active; he sought and obtained an order releasing him from confinement altogether in 1993. Every 60 days the staff of Elgin filed a new treatment plan with the court for each plaintiff. These plans recounted the limitations on passes. Either plaintiff could have opposed the implementation of the new plan on constitutional grounds—or on the ground that the change in the pass policy violated the orders approving earlier treatment plans and thus constituted contempt of court. No one doubts that the state courts had jurisdiction to consider the precise constitutional claims that have been raised in this litigation. The cases pending in the courts of Illinois are continuations of the original criminal prosecutions, and preserving a state's right to litigate criminal cases in its own courts is the core of the *Younger* doctrine. Instead of presenting objections to the treatment plans, plaintiffs filed an independent suit in federal court. Their briefs imply that they made this choice because they were dissatisfied with the relief that state courts had afforded to other inmates at Elgin. But the limited relief may reflect not any restrictions on the state tribu-

nal's power, or any unwillingness to entertain constitutional claims, but the shakiness of plaintiffs' arguments on the merits. We do not share plaintiffs' apparent view that dissatisfaction with state courts' handling of an issue justifies carting one's claim off to federal court.

There are exceptions to the *Younger* principle, but plaintiffs do not contend that any is applicable; they rest with the district court's conclusion that by not seeking an explicit injunction against the state court's role they have avoided *Younger,* and that conclusion is incorrect. Plaintiffs' litigation strategy creates another potential argument. Because they have been released, plaintiffs are not *now* litigants in active criminal proceedings; the staff at Elgin does not file new treatment plans, and there is no state forum in which plaintiffs may litigate their defenses to the details of these plans. But the Supreme Court long ago held that parties may not avoid *Younger* by withholding defenses from the state proceeding and commencing the federal suit as soon as the state case ends. *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 607–11, 95 S.Ct. 1200, 1209–12, 43 L.Ed.2d 482 (1975).

"Federal post-trial intervention, in a fashion designed to annul the result of a state trial, ... deprives the States of a function which quite legitimately is left to them, that of overseeing trial court dispositions of constitutional issues which arise in civil litigation over which they have jurisdiction." *Id.* at 609, 95 S.Ct. at 1210 (footnote omitted). See also *NOPSI,* 491 U.S. at 369, 109 S.Ct. at 2518–19. What *Huffman* decried is, however, exactly what plaintiffs want. Treatment plans to which they made no objection in the state tribunals supervising their treatment were put into effect; then plaintiffs sought to annul this result in federal litigation. *Younger* bars such a step.

 *Heck v. Humphrey,* —— U.S. ——, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), holds that a prisoner may not obtain damages for allegedly unconstitutional conviction or imprisonment unless the conviction or sentence has been reversed—a step that for state prisoners entails exhaustion of state remedies under 28 U.S.C. § 2254. *Younger* supports a complementary holding for conditions of confinement that are actively supervised by state courts. This is not at all to create an exhaustion requirement for condi-

tions-of-confinement litigation under § 1983. *Felder v. Casey,* 487 U.S. 131, 147–48, 108 S.Ct. 2302, 2311–12, 101 L.Ed.2d 123 (1988), and *Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), hold that there is none. But it is to say that an inmate already participating in state litigation must make his stand there rather than attempt the equivalent of federal-defense removal by filing an independent § 1983 suit. Actually these plaintiffs are attempting state-defense removal too, arguing that the revocation of the passes violated the courts' earlier orders approving treatment plans that provided for passes. Violation of a state court's order is contempt of court, not a violation of the Constitution. *Pacelli v. deVito,* 972 F.2d 871, 876 (7th Cir.1992). By stressing the tension between defendants' directives and the orders of the state courts, plaintiffs make pellucid the fact that their arguments should have been presented to the state courts.

 We know from *Deakins v. Monahan,* 484 U.S. 193, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988), that when *Younger* requires equitable arguments to be presented to state courts, claims for monetary relief also are stayed—but should not be dismissed outright if the claims for damages cannot be redressed in the state proceeding. Plaintiffs have not argued, however, that their claims for money damages lie outside the competence of the state courts that supervised their confinement. Illinois does not maintain a separate system of criminal courts; criminal cases (and subsequent disputes about confinement and treatment) are heard by judges of the circuit courts, which possess general jurisdiction. If a single wrong leads to both equitable relief and damages, judges of the circuit courts are empowered to provide both remedies. The judge not only could have ordered the restoration of passes but also could have made a monetary award for the period between their revocation on May 30, 1990, and the date of their restoration. Because the state courts were empowered to award both equitable and monetary relief, *Younger* obliged plaintiffs to make all of their arguments there. Any other approach would tolerate exactly the sort of end run that *Huffman* forbids.

■ *Younger* is hardly the only doctrine designed to protect state forums. Res judicata (claim preclusion) and collateral estoppel (issue preclusion) are fully applicable under § 1983, *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984), and may have undercut plaintiffs' claims. They had an opportunity to litigate, and their failure to oppose approval of the treatment plans does not avoid the fact that they *were* approved. *Harris Trust & Savings Bank v. Ellis*, 810 F.2d 700, 704–05 (7th Cir.1987) (Illinois law). Preclusion is, however, an affirmative defense, which the defendants did not invoke. See David P. Currie, *Res Judicata: The Neglected Defense*, 45 U.Chi.L.Rev. 317 (1977). Nelson and Manos might have been able to avoid issue preclusion because their very quiescence in the state proceedings meant that the approval was uncontested, and issue preclusion rests on the disposition of a contested element of the claim. Then there is the *Rooker–Feldman* doctrine, which establishes that aggrieved litigants may not use § 1983 to contest the outcome of state litigation. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Plaintiffs avoid this rule, however, because they challenge the alteration of their passes independently of the courts' approval of that alteration. *GASH Associates v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir.1993). *Younger* and *Huffman* complete the picture. Even when res judicata, *Rooker–Feldman*, and the exhaustion doctrine of § 2254 are inapplicable, a litigant opposing the state, in state court, on a subject of importance to the state, must use that forum for resolution of constitutional defenses. Plaintiffs had, and did not use, a state forum in which they could have presented the arguments they now urge. Their deliberate bypass of the opportunity to litigate in state court forecloses them from litigating in federal court. Our conclusion that *Younger* rather than *Burford* supplies the proper ground of decision does not affect the district court's judgment: the complaint must be dismissed.

AFFIRMED.

CUDAHY, Circuit Judge, concurring in part and dissenting in part.

This is in some respects a puzzling case, but I believe we must start with first principles. It is a grave matter to shut the federal courthouse doors in the face of litigants who present claims over which there is federal jurisdiction. Abstention is "an extraordinary and narrow exception" permissible only in "rare" cases and then only on grounds clearly recognized as adequate by the Supreme Court. *Allegheny County v. Mashuda*, 360 U.S. 185, 188, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959); *see also Trust & Investment Advisors, Inc. v. Hogsett*, 43 F.3d 290, 294 (7th Cir.1994).

In the matter before us I think that the district court made bad law out of what may be a hard case. The majority, in an effort to devise a policy for what is at least an unusual case, makes equally bad law. It would require a stretch far beyond any recognized principles to see this as a case for *Burford* abstention and the majority correctly addresses this issue. But, in so doing, it provides an expansive interpretation of *Younger* which would authorize closing the courthouse doors almost at will.

There are several reasons why *Younger* has no application here. First, this is not a case of a federal court attempting to enjoin a state proceeding. *See Trust & Investment Advisors, Inc.*, 43 F.3d at 295 (*Younger* abstention involves enjoining "judicial or judicial in nature" state proceedings). Here there are at worst potentially parallel proceedings and there is no showing that the federal proceedings will, "damage [ ] the state interest" as the majority suggests.

Second, there are no ongoing or pending state proceedings to be interfered with here. Under Illinois law, the Department of Mental Health (Department) is required to file a treatment plan for each NGRI inmate with the state court every 60 days. That plan, if the Department so chooses, can recommend that an inmate be given on- or off-grounds passes. If the court approves the treatment plan, then the Department may allow the inmates to use their passes. Both plaintiffs in this case had passes originally, but after

two inmates escaped from Elgin, those passes were summarily taken away by the Department without any individual review administratively or by the state courts. Passes were also taken away from the other NGRI's. After a security fence was built, some NGRI's were again given passes, but the passes now only allowed movement in the very small area within the fence, and only for a short time.

The majority implies that the plaintiffs have litigated this issue and others relating to their confinement in state court, with plaintiff Manos being so active that he eventually obtained his release. But the Magistrate Judge's findings of fact say that it was the *Department* which submitted a plan that "restored" the new passes to the plaintiffs and which suggested the release of plaintiff Manos. In other words, the plaintiffs were not actively litigating this issue; rather the *status quo* of the Department's suggesting treatment plans and the court's approving them simply continued. The Department decided what to suggest as treatment, and it was the Department which decided to remove passes without individual review, the Department which decided that when it reintroduced passes they would be much more restrictive and the Department which decided not to suggest any more less-restrictive passes. The plaintiffs are challenging the Department's decision to do away with their court-approved (and less-restrictive) passes, not a decision by the state courts. Their reason for going to federal court may simply reflect a concern that the state courts may too routinely approve the recommendations of Department employees.

It is true that the state courts retain jurisdiction of the inmates at Elgin and must reapprove treatment plans every 60 days. The Department retains some discretion in implementing the plans. It is also true that the Department may not be able to exercise its discretion should the court *order* it to provide all the privileges approved in the plan. But the fact that there may be a state remedy in existence but not invoked is certainly not grounds for *Younger* or any other species of abstention. Not infrequently, federal and state courts may have *jurisdiction* to address similar problems but, unless federal measures disrupt on-going state proceedings, there are generally no grounds for abstention.

Abstention is for the rare case, and this case surely fits into the federal § 1983 jurisprudence. We have also decided similar cases brought by Elgin inmates in this court in the past, and saw no reason to abstain then. For example, in *Johnson v. Brelje,* 701 F.2d 1201 (7th Cir.1983), individuals found "unfit to stand trial" (USTs) brought a § 1983 claim against the Department of Mental Health for its practice of assigning all USTs to a more secure facility, for its failure to allow access to telephones and for unduly restricting the movements of inmates around the facility. In *Maust v. Headley,* 959 F.2d 644 (7th Cir.1992), an Elgin inmate who had been transferred to the more secure Chester Mental Health Center brought a § 1983 claim against the Department of Mental Health, saying that the transfer and visitation restrictions imposed by the Department violated his right to due process. In both of these cases, the plaintiffs' confinement was governed by a statute which required approval of UST treatment plans by the state court, just like the statute at issue here governing NGRIs. Thus the plaintiffs in *Johnson* and *Maust* presumably had the same "ongoing relationship" with the state courts that plaintiffs here do. Yet in both these cases we reached the merits with no talk of abstention or *Younger*.

I do not therefore agree that *Younger* abstention applies, and I respectfully dissent.

Before CUDAHY, ESCHBACH, and EASTERBROOK, Circuit Judges.

## ON PETITION FOR REHEARING

EASTERBROOK, Circuit Judge.

One of the arguments in the petition for rehearing leads us to elaborate on our initial

opinion. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), applies to plaintiffs' claim for damages only if the state forum could have entertained a request for damages. We wrote that, in Illinois, "[i]f a single wrong leads to both equitable relief and damages, judges of the circuit courts are empowered to provide both remedies. The judge not only could have ordered the restoration of passes but also could have made a monetary award for the period between their revocation on May 30, 1990, and the date of their restoration." 44 F.3d 497, 503. Plaintiffs insist that this is incorrect—that only the state's Court of Claims may award damages. If that is so, then *Deakins v. Monahan,* 484 U.S. 193, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988), entitles plaintiffs to pursue damages in federal court free from any inhibition of the *Younger* doctrine.

 The petition for rehearing asserts that "damage claims against the State of Illinois and its employees can only be maintained in the Illinois Court of Claims." The assertion is wrong. That court possesses exclusive jurisdiction of all claims against the state itself, 705 ILCS 505/8, but not of claims against state employees. Illinois deems some suits against employees to be suits against the state, and therefore to come within the Court of Claims' exclusive jurisdiction, but the Supreme Court of Illinois makes the same distinction as the Supreme Court of the United States did in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and *Kentucky v. Graham,* 473 U.S. 159, 169–70, 105 S.Ct. 3099, 3107–08, 87 L.Ed.2d 114 (1985): suits against a public employee in his official capacity are suits against the state; suits against the employee in his personal capacity are not suits against the state; and a suit seeking damages for misconduct (in particular, for a violation of the Constitution) usually is a personal-capacity suit. The circuit courts, rather than the Court of Claims, possess jurisdiction "when it is alleged that the State's agent acted in violation of statutory or constitutional law, or in excess of his authority". *Healy v. Vaupel,* 133 Ill.2d 295, 308, 140 Ill.Dec. 368, 375, 549 N.E.2d 1240, 1247 (1990). See also, e.g., *Senn Park Nursing Center v. Miller,* 104 Ill.2d 169, 188, 83 Ill.Dec. 609, 620–21, 470 N.E.2d 1029, 1038–39 (1984). Plaintiffs allege that their jailers acted in violation of the Constitution of the United States and the laws of Illinois. The circuit court therefore could have awarded damages, if plaintiffs were entitled to that relief on the merits. But plaintiffs never presented their arguments to the state tribunals, and as our original opinion explains they may not disdain opportunities in ongoing state litigation and later seek relief in federal court.

The petition for rehearing is denied. No judge in active service has called for a vote on the suggestion of rehearing en banc, which is rejected.

CUDAHY, Circuit Judge, dissenting.

I dissented in the main case, *Nelson v. Murphy,* 44 F.3d 497 (7th Cir.1995), from the remarkable conclusion that *Younger* abstention could apply when there was no federal attempt to enjoin a state proceeding, and, in fact, where there was no ongoing or pending state proceeding with which to interfere. There are more fundamental reasons to reject the majority's view here than whether these damage claims may be brought exclusively in the Court of Claims. Therefore, with the utmost respect, I dissent from the present opinion and order and would grant the petition for rehearing.