149 F.3d 709
 Orville Lynn MAJORS, Plaintiff-Appellant,
v.
Katie ENGELBRECHT, Kay Leach, Nancy McKee, George Patton,
Juanita Richards, and Brenda Smith, individually and in
their official capacities as members of the Indiana State
Board of Nursing, Pamela Carter, individually and in her
official capacity as Attorney General of the State of
Indiana, Michael Aikman, Alan Fortner, Joan Kanizer, Mike
Carty, Butch O'Neal, and Norma Hughes, individually and as
members of the Board of Trustees of Vermillion County
Hospital, and John Ling, Jr., individually and as former
president and chief executive officer of Vermillion County
Hospital, Defendants-Appellees.
 No. 97-2174.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 9, 1998.
Decided July 23, 1998.
 
 I. Marshall Pinkus, Dutton & Overman, Craig Pinkus (argued), Lowe, Gray, Steele & Darko, Indianapolis, IN, for Plaintiff-Appellant.
 Jon B. Laramore (argued), Office of the Attorney General, Indianapolis, IN, for Defendants-Appellees Katie Engelbrecht, Kay Leach, Nancy McKee, George Patton.
 Donald D. Levenhagen (argued), Hill, Fulwider, McDowell, Funk & Matthews, Indianapolis, IN, for Defendant-Appellee Michael Aikman.
 Before FLAUM, DIANE P. WOOD, and EVANS, Circuit Judges.
 TERENCE T. EVANS, Circuit Judge.
 
 
 1
 From 1993 to 1995 Orville Lynn Majors worked as a licensed practical nurse (LPN) in the intensive care unit (ICU) of Vermillion County Hospital (since renamed West Central Community Hospital) in Clinton, Indiana. Although he may have been a competent nurse, he had one problem: an incredibly high number of elderly patients died under his watch. By 1995, after rumors that he was euthanizing patients started to circulate, the hospital suspended him, and the Indiana State Board of Nursing suspended his license. Thereafter, the state attorney general started an action to revoke Majors' license. In response, Majors filed this § 1983 suit asking the district court to enjoin the state proceedings. The suit also sought damages from the AG, the members of the board, and from the hospital's board of trustees and president. District Judge Larry McKinney abstained from entertaining the claims against the AG and the board and dismissed the damages claims against the hospital defendants.
 
 
 2
 During 1994, 100 of the 351 people admitted to the Vermillion County hospital's tiny 4-bed ICU died. A large percentage of those who died were elderly. In comparison, during the previous 4 years, an average of only 27 patients a year passed away, out of an average of 354 admitted to the ICU each year.
 
 
 3
 In early 1995, spurred on by her suspicions (and those of other nurses), registered nurse Dawn Stirek did a correlation, based on work attendance charts, between Majors' presence in the ICU and patient deaths. Her rough analysis--it was done in 2 days and didn't account for all others present-showed that Majors was present for more deaths than any other nurse, almost twice as many as the nearest contender.
 
 
 4
 On March 7, 1995, Stirek showed her analysis to John Ling, the president and chief executive officer of the hospital. Two days later, Ling called Majors into his office and suspended him from work, with pay. Ling refused to give Majors a reason for the suspension. Later, Ling went to the police and asked them to investigate.
 
 
 5
 After Majors' suspension, although the hospital apparently tried to keep a lid on the controversy, leaks developed. Some nurses, who were afraid of being fired if they spoke publicly about the issue, wrote an anonymous "letter to the editor" accusing Majors of being a "Dr. Krevorkian" and the hospital of covering it up. A family member of a nurse wrote a similar letter.
 
 
 6
 Meanwhile, the attorney general began an investigation at the hospital. After deciding that there was evidence of misconduct, she asked the Indiana State Board of Nursing to consider suspending Majors' nursing license. At the time, Indiana's summary license suspension law, Ind.Code § 25-1-9-10(a), allowed the board to suspend any health practitioner's license for 90 days, without notifying the practitioner,[1] if his continued practice posed "a clear and immediate danger to the public health and safety." The suspension was renewable for additional 90-day periods, but only after notice and a hearing.
 
 
 7
 Pursuant to the summary suspension law, the board held a hearing on the status of Majors' license on April 27, 1995, without giving Majors notice-although, curiously, the board gave notice to the news media. Evidence (the Stirek analysis and statistics from the investigations, and testimony from some nurses and the relative of a dead patient about Majors' conduct with patients) was presented, and the board voted to suspend Majors for 90 days. Ling then told Majors that his suspension from the hospital was now without pay.
 
 
 8
 Because the emergency suspension order was not reviewable under Indiana law, Majors was without an immediate judicial remedy. So he asked the board for a hearing to attack his suspension. Meanwhile, a majority of the board ordered the AG to file a complaint against Majors for the permanent revocation of his license. See Ind.Code § 25-17-7(b). The complaint which was filed, besides alleging Majors' responsibility for patient deaths, also hedged and asserted alternative grounds for revocation--that he performed certain tasks without direction or supervision from a registered nurse or doctor, and other related claims.
 
 
 9
 The hearing Majors requested (which doubled as a suspension renewal hearing) was held in September, and it resulted in another 90-day suspension. The board's official reason for renewing the suspension was Majors' unsupervised working habits, although the bigger issue of the patients' deaths was lurking in the background.
 
 
 10
 After the hearing, the attorney general dropped from her complaint the allegations that Majors participated in patient deaths. In mid-November the board set the hearing on its revocation complaint for December 18, 1995. A few days later Majors filed this federal suit, under § 1983. He lodged official capacity claims against the AG and the board to enjoin them from taking his license on the grounds that the board was biased against him and had prejudged his case. He also wanted a declaration that Indiana's summary suspension law was unconstitutional--on equal protection and due process grounds. And he wanted damages (1) from the individual board members (and apparently the AG, too) for violating his right to due process of law throughout the suspension/revocation process, and (2) from Ling and the hospital's board of trustees for singling him as a culprit and suspending him from work.
 
 
 11
 At the end of November Majors filed a motion in federal court to preliminarily enjoin the December hearing on the AG's complaint. The board and the AG then filed a Rule 12(b)(1) motion to dismiss, citing Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny, which require federal courts to abstain from enjoining ongoing state proceedings that are (1) judicial in nature, (2) implicate important state interests, and (3) offer an adequate opportunity for review of constitutional claims, (4) so long as no extraordinary circumstances--like bias or harassment--exist which auger against abstention. Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 429, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982).
 
 
 12
 The district court held a hearing on the board's motion to dismiss. Although the motion was addressed under Rule 12(b)(1), the judge evaluated it under Rule 12(b)(6) by taking the allegations of the complaint--including the allegations of bias from Majors' injunction request--as true. He denied the motion because the allegations established one of Younger's extraordinary circumstances.
 
 
 13
 Afterwards, Judge McKinney heard argument on Majors' preliminary injunction motion, and on December 18 the request was denied because Majors hadn't shown a likelihood of success on the merits. The judge noted that Majors' evidence of bias (the way the emergency suspension hearings were conducted and some unfavorable evidentiary rulings made there) wasn't nearly enough to win at trial.
 
 
 14
 Later that same day the state licensing hearing got underway. The board (with two members dissenting) ended up lifting Majors' license indefinitely (at least for a minimum of 5 years), essentially for working without proper supervision. The suspension was a final order suitable for judicial review in the courts of Indiana.
 
 
 15
 Under Indiana law, state courts consider agency actions after the aggrieved party files a petition for review. See Ind.Code § 4-21.5-5-1 et seq. Majors quickly filed such a petition in the Marion County Superior Court, asking the court to reverse the board's order and reinstate his license, and for "such relief as is permitted to remedy the monetary damage he has suffered [and] the legal costs and expenses he has incurred." He raised the same constitutional issues as in his federal suit. That action, as far as we know, is still pending.
 
 
 16
 Although the passing of the December hearing took the urgency out of Majors' federal suit, it was still alive, so the hospital and Ling filed motions to dismiss and the board (and AG) filed a motion for summary judgment (on Younger abstention grounds). Judge McKinney granted both motions. And now, despite more pressing matters created by intervening events, Majors' appeal, filed in the summer of 1997, is up for consideration. The "more pressing matters" are that after a 34-month investigation, the estimated expenditure of more than a million dollars, and the exhumation of some 15 bodies, Majors was arrested on December 29, 1997. He is presently charged with six counts of murder in an Indiana state court. We do not know the status of the criminal case.
 
 
 17
 We first consider the claims against the state defendants and Judge McKinney's decision to abstain under the framework set forth in Middlesex. We review the district court's decision to abstain, under Younger, de novo. Trust & Inv. Advisers, Inc. v. Hogsett, 43 F.3d 290, 294 (7th Cir.1994).
 
 
 18
 First, the matter of injunctive relief.[2] Because a prohibitory injunction against the hearing is now moot--the hearing is over and Majors has surrendered his license--we are left with the request for a mandatory injunction ordering reinstatement of his license, or at least a new hearing. Younger applies to more than just prohibitory relief against the state proceeding, Nelson v. Murphy, 44 F.3d 497, 501 (7th Cir.1995), so Majors' request comes within its sway.
 
 
 19
 Middlesex's first requirement for Younger abstention is an ongoing "judicial in nature" proceeding. 457 U.S. at 432-34, 102 S.Ct. 2515. For purposes of Younger abstention, administrative proceedings are "judicial in nature" when they are coercive--i.e., state enforcement proceedings, Alleghany Corp. v. Haase, 896 F.2d 1046 (7th Cir.1990), vacated on other grounds, 499 U.S. 933, 111 S.Ct. 1383, 113 L.Ed.2d 441 (1991), as opposed to remedial, Ohio Civil Rights Comm. v. Dayton Christian Sch., Inc., 477 U.S. 619, 627 n. 2, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (discussing Patsy v. Board of Regents of State of Florida, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982)), or legislative, see, e.g., New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (NOPSI); Hawaii Housing Auth. v. Midkiff, 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984). Majors now concedes, as we think he must, that his hearing was "judicial in nature."So the proceeding is the kind covered by Younger, but is it ongoing? Of course, at the time Majors filed his suit the proceeding was pending--the board had taken over the matter and had scheduled a hearing on the AG's complaint. And today, with his active review petition, Majors' case is still going on. See Bettencourt v. Board of Reg. in Medicine, 904 F.2d 772, 777-78 (1st Cir.1990). However, Majors points out that the initial hearing is over and his suit was under consideration when no state court proceedings were going on--after the board issued its decision and before he filed his review petition--and, he says, he could turn around and dismiss his state review petition tomorrow and file another § 1983 suit.
 
 
 20
 None of this matters, however, because unless a federal plaintiff beats the state to court--and gets past the preliminary stages, Hicks v. Miranda, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975)--the time when the federal suit is filed is largely irrelevant. Since Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), separate state trial and appellate review procedures are viewed as single ongoing proceedings. See NOPSI, 491 U.S. at 368-69, 109 S.Ct. 2506; Kercado-Melendez v. Aponte-Roque, 829 F.2d 255, 268 (1st Cir.1987) (Breyer, J., dissenting). In Huffman, which involved a state civil enforcement proceeding, the § 1983 plaintiff, after losing in a state court, elected to file a federal action instead of appealing the decision to a state appellate tribunal. 420 U.S. at 598, 95 S.Ct. 1200. The Court held Younger precluded federal intervention in the state action. It reasoned that allowing what in effect would be a federal alternative to state appellate process would, besides disrupting and duplicating an ongoing proceeding, cast doubt on the ability of state appellate courts to oversee their trial courts. Id.
 
 
 21
 Here, ignoring the fact that Majors filed for state court review, we have an analogous situation. The only distinction is that the proceedings here are administrative, not judicial--a distinction without a difference, if we read Ohio State Civil Rights Commission v. Dayton Christian Schools, Inc., 477 U.S. 619, 627, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (quoting Gibson v. Berryhill, 411 U.S. 564, 576-77, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), "that 'administrative proceedings looking toward the revocation of a license to practice medicine may in proper circumstances command the respect due court proceedings' ") correctly. See Haase, 896 F.2d at 1053 ("Whether the state proceeds against malefactors administratively or judicially is a distinction irrelevant to the policy behind Younger ...."), and NOPSI, 491 U.S. at 369, 109 S.Ct. 2506 (assuming without deciding that this is the case).[3] So, as in Huffman, Majors' proceeding, although the initial hearing is over, is still ongoing.
 
 
 22
 Moving on, Middlesex also requires that the proceeding implicate important state interests. That the regulation and licensing of health care professionals is an important matter of state concern is beyond dispute, and so is another requirement for abstention.
 
 
 23
 The final requirement is that the proceeding allow an adequate opportunity to raise constitutional challenges. Subsequent judicial review is a sufficient opportunity, Dayton Christian Schools, Inc., 477 U.S. at 629, 106 S.Ct. 2718, and here Indiana law provides for review of constitutional claims by way of a petition to the state court, an opportunity Majors has taken advantage of. He complains, however, that Judge McKinney, by ruling on the constitutional issues in rejecting his injunction request, will influence the state court's decision on the same issues and that that will hamper the adequacy of his state review. But whatever effect the denial of his federal preliminary injunction request will have, it's clear Majors chose his poison, and by electing to seek a federal injunction he took the risk that an unfavorable ruling could potentially color his future state court review. On this point, it seems, Majors is hoisted on his own petard.
 
 
 24
 So, the positive requirements of the Middlesex framework are satisfied and a prima facie case for Younger abstention is present. Finally, Judge McKinney also found insufficient evidence of the extraordinary circumstance of bias that would excuse abstention. We have reviewed the record and we reach the same conclusion, although we think the evidence of bias is more like nonexistent rather than merely insufficient.
 
 
 25
 With the injunction thrown out, we proceed to Majors' claims against the AG and board members. The situation is confusing. While Majors sued these state defendants in their individual capacities, Judge McKinney didn't directly address the damages claims when he abstained. However, he did enter a final judgment stating that "[n]o claims remain against any defendant"--easing our concern about appellate jurisdiction and making us wonder if Majors abandoned these claims. On appeal, Majors doesn't make the situation any clearer. He discusses abstention generally, but his focus is on the denial of his injunctive request, not the effect of abstention on his damages claims. And when he does discuss individual claims, he points only at those against the "county defendants"--i.e., the hospital board of trustees and Ling. However, one of his arguments--that the effect of Judge McKinney's ruling is "that Majors' suit against the county defendants is time barred"--makes sense only if directed at the state defendants; he can't complain that the claims against the county defendants are time barred because they were dismissed on their merits.
 
 
 26
 Ironically, Majors is the beneficiary of the confusion he helped to create because, for sake of simplicity, we'll ignore his possible forfeiture and consider whether Judge McKinney should have abstained from the damages claims. In this circuit, abstention from damages suits is proper. Nelson, 44 F.3d at 502. That's because a federal damages suit, although not interfering with the state proceeding to the same degree as an injunction, could beat the state action to judgment and either undermine, Simpson v. Rowan, 73 F.3d 134, 138 (7th Cir.1995), cert. denied, --- U.S. ----, 117 S.Ct. 104, 136 L.Ed.2d 58 (1996), or preclude, Deakins v. Monaghan, 484 U.S. 193, 208-09, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988) (White, J., concurring), the State's consideration of some issues.
 
 
 27
 But because we already cashiered Majors' objections to abstention, we are only left with the issue of how to abstain from these claims; by dismissing or merely staying them. Majors wants a stay, not a dismissal, noting that otherwise his § 1983 claim against the individual state defendants could be time-barred when the state court review is done. The crucial fact in this determination is whether damages are available in the state proceeding. If they aren't, a stay is appropriate to avoid losing the plaintiff's claim to the statute of limitations without adjudicating it, Simpson, 73 F.3d at 138, but where they are available, dismissal is appropriate. Nelson, 44 F.3d at 502. Here, where Majors actually asked the state court for damages and there is authority for appending a § 1983 claim to an Indiana state court judicial review proceeding, Magnant v. Lane, 582 N.E.2d 461 (Ind.Ct.App.1991) (injunctive and declaratory relief); Stevens v. Indiana Dept. of Public Welfare, 566 N.E.2d 544 (Ind.Ct.App.1991) (same), dismissal was proper.
 
 
 28
 Lastly, Judge McKinney dismissed all claims against the hospital board, and the due process claim against Ling, for failure to state a claim under Fed.R.Civ.P. 12(b)(6). Majors alleged violations of his rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. All but three pages of Majors' argument in his brief on appeal focus on the claims against the state defendants, and the remaining three pages do not address the aspect of the district court's opinion discussing and rejecting his claims against the hospital board and his due process claim against Ling. Therefore, Majors has not preserved an issue for review on these claims. Ricci v. Arlington Heights, Illinois, 116 F.3d 288, 292 (7th Cir.1997). The judgment of the district court is A FFIRMED.
 
 
 
 [1]
 On July 1, 1995, (after Majors' hearing) the law was amended. It now requires the board to notify physicians and dentists of board emergency suspension hearings, § 25-1-9-10(b), but nurses are not covered by the amendment
 
 
 [2]
 Majors effectively concedes that, without a license, he suffers no apprehension of imminent injury from the summary suspension law and therefore lacks standing to seek a declaratory judgment that it is unconstitutional
 
 
 [3]
 While the Court's opinion considered the issue open, Chief Justice Rehnquist expressed his strong opinion that proceedings "should be regarded as 'ongoing' for the purposes of Younger abstention until state appellate review is completed [citing Dayton Christian Schools]," NOPSI, 491 U.S. at 374, 109 S.Ct. 2506 (Rehnquist, C.J., concurring), and Justice Blackmun doubted whether the question was even open. Id. at 374-75, 109 S.Ct. 2506 (Blackmun, J., concurring). However, Thomas v. Texas State Board of Medical Examiners, 807 F.2d 453 (5th Cir.1987), which predates NOPSI, disagrees. There, the board revoked Dr. Thomas' license to practice medicine and, although he filed an appeal, he later withdrew it in favor of a § 1983 suit. Id. at 454. The Fifth Circuit found that the admittedly coercive revocation proceeding was no longer an ongoing one for purposes of Younger because it was finished. Id. at 456. Thomas is unpersuasive because it was based on the distinction between administrative enforcement proceedings and civil enforcement proceedings of the Huffman variety, a distinction that is immaterial