NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 17, 2014[*]
Decided April 25, 2014

**Before**

JOEL M. FLAUM, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 13-2426

| | |
|---|---|
| DA VONTE LOVE, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 11-C-1054 |
| DAVID A. CLARKE, JR., et al., *Defendants-Appellee*s. | William C. Griesbach, *Chief Judge*. |

**O R D E R**

Da Vonte Love, a Wisconsin inmate, contends in this suit under 42 U.S.C. § 1983 that four correctional officials must pay damages for enforcing a state-court order that restricted his contact with the outside world. Concluding that the defendants were either not personally involved in enforcing the court order or entitled to quasi-judicial immunity, the district court granted summary judgment. Because Love cannot show that the court abused its discretion in denying his request to recruit counsel, we affirm.

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

After Love was convicted of substantial battery, WIS. STAT. § 940.19(2), he faced trial for sexual assault, WIS. STAT. § 940.225(2)(a). The state court found that he had attempted to dissuade the victim from testifying and ordered that his phone, visitation, and mail privileges be rescinded, "with the exception of any communication to his attorney," to prevent him from further intimidating witnesses. WIS. STAT. § 940.47. Prison and jail officials enforced the order by moving Love to maximum-security areas as he awaited trial for more than two years. In addition to limiting his contact with outsiders, the rules of these areas also strictly limited what items he could keep in his cell and restricted his access to educational and recreational programs and religious services. Believing that these restrictions deprived him of his constitutional rights, Love sued in federal court.

The district court allowed Love to proceed on claims that the defendants had deprived him of his first-amendment rights and entitlement to life's basic necessities, but denied two motions. First, it denied his motion to stay the state-court order, explaining that it could not interfere in state-court criminal proceedings. *See Younger v. Harris*, 401 U.S. 37, 43 (1971). It added that if Love wished to appeal the no-contact order, he could do so through his attorney in state court. The court also declined Love's request to recruit counsel, reasoning that, even with his below-average reading skills and need for psychiatric medication, Love appeared capable of handling his own case, had handled others by himself, and had not provided any evidence that he had tried to obtain legal counsel. To address Love's argument that the no-contact order hampered his prosecution of this case, the district court delayed discovery until after the end of Love's state trial, when the no-contact order was lifted.

After discovery, the defendants moved for summary judgment. Love did not respond to the defendants' statement of material facts, but asked the court to extend discovery. The court denied his request after noting that Love had not identified the discovery he needed or adequately explained why he was unable to obtain it earlier, during the three months that the court had allowed. The summary-judgment record reflects that, except for six months in segregation as punishment for disciplinary infractions, Love was confined to the maximum-custody areas of both jail and prison. Maximum-custody confinement, which restricted Love to one hour of exercise daily, was the easiest place for staff to enforce the state-court order limiting Love's outside communications to only his attorney. A response that Love received to a jail grievance confirms that jail staff refused to allow Love to call even the court:

You will not be allowed to call the courts due to the fact that you are representing yourself on a CIVIL case. That case has nothing to do with the case that you are serving time for. You are allowed attorney calls for criminal cases. A Civil cases [sic] has nothing to do with your criminal case.

The district court granted summary judgment to all defendants. It explained that three of the defendants were not liable because they were undisputedly not personally involved in a decision to place Love in segregation or maximum custody. The final defendant was a prison security director who had reviewed Love's status and limited his phone calls and his access to non-legal mail. The court granted him summary judgment based on quasi-judicial immunity for enforcing a state-court order.

On appeal we understand Love to argue that the district court erred in denying his motion for recruitment of counsel. He asserts generally that counsel was necessary given his elementary-level education and contends that counsel would have been able to help him obtain the names of other staff who had personally reviewed his status.

The district court correctly applied the two-step standard articulated in *Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007) (en banc), and reasonably declined to recruit counsel. First, the court appropriately noted that Love had not described, as *Pruitt* requires, what effort he made to obtain counsel once the no-contact order was lifted. We understand Love to challenge this observation by providing us with two letters from legal organizations declining to represent him. But he did not submit these letters to the district court (in fact, both were written after the court made its decision), so he cannot rely on them to charge the district court with error. *See id.* at 659. Second, the district court acknowledged Love's limited education and his general assertion of side effects from psychiatric medication. But it appropriately weighed those factors against his demonstrated ability to articulate his grievances, his history of handling other litigation, and his personal knowledge of the facts underlying his claims here. Given these factors, the court did not abuse its discretion in concluding that Love was capable of litigating this case. *See Bracey v. Grondin*, 712 F.3d 1012, 1017–18 & n.3 (7th Cir. 2013); *Jackson v. Kotter*, 541 F.3d 688, 699–700 (7th Cir. 2008).

In any event, we will remand a case only if there is a reasonable likelihood that the presence of counsel would have changed the outcome, *see Pruitt*, 503 F.3d at 660, and Love cannot make that showing. The correctional staff who limited Love to contacting only his attorney are entitled to absolute immunity for enforcing the precise terms of a valid court order. *See Snyder v. Nolen*, 380 F.3d 279, 287 (7th Cir. 2004);

*cf. Dunn v. City of Elgin, Illinois*, 347 F.3d 641, 646–48 (7th Cir. 2003). We recognize the first-amendment concerns of a state-court order that barred Love from calling even the courts. But the place to contest the order was (through his attorney) in the state court that issued the order, not in a suit for damages against those enforcing it. *See Nelson v. Murphy*, 44 F.3d 497, 502 (7th Cir. 1995) (explaining that detainees seeking to challenge "conditions of confinement that are actively supervised by state courts" must litigate those conditions in state court).

We are aware that, by placing Love in maximum-custody status, staff went beyond the requirements of the state-court order. Staff also limited his access to programs generally available to other inmates. But none of the restrictions mentioned in Love's complaint or other filings (namely, a lack of education programs, religious services, and recreation time) deprived him of a constitutional right. We have explained that convicted prisoners enjoy no free-standing constitutional right to educational or rehabilitative programs, *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000), and a lack of religious services in itself is not a substantial burden on religious practice, *Kaufman v. McCaughtry*, 419 F.3d 678, 682–83 (7th Cir. 2005). Finally, although a long deprivation of out-of-cell exercise can violate the Eighth Amendment, *Turley v. Rednour*, 729 F.3d 645, 652 (7th Cir. 2013), Love did not dispute the defendants' evidence that he was generally allowed one hour per day of recreation time while on maximum-custody status, which satisfies constitutional norms, *see Pearson v. Ramos*, 237 F.3d 881, 884–85 (7th Cir. 2001), *Davenport v. DeRobertis*, 844 F.2d 1310, 1315–16 (7th Cir. 1988).

**AFFIRMED**.