No. 2--99--0788

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

__________________________________________________________________

XLP CORPORATION, d/b/a DANCERS; ) Appeal from the Circuit Court

DANNY CHRISTOFALOS, d/b/a ) of Lake County.

Baby Dolls and Video Magic; )

and 41 NEWS, INC., )

) 

Plaintiffs-Appellants, )

)

v. ) No. 98--CH--1106

)

)

THE COUNTY OF LAKE, ) Honorable

) Charles F. Scott,

Defendant-Appellee. ) Judge, Presiding.

_________________________________________________________________

PRESIDING JUSTICE BOWMAN delivered the opinion of the court:

Plaintiffs, XLP Corporation, d/b/a Dancers; Danny Christofalos, d/b/a Baby Dolls and Video Magic; and 41 News, Inc., appeal from the trial court's order granting the motion of defendant, County of Lake, for judgment on the pleadings on all counts of plaintiffs' complaint for declaratory judgment and permanent injunctive relief.  Plaintiffs had filed their complaint as a result of defendant's adoption of an adult use ordinance, "An Ordinance Establishing Licensing Regulations for Adult Entertainment Establishments" (ordinance) (Lake County, Ill., Ordinance No. 6:1--15 (eff. February 11, 1998)), establishing regulations for businesses providing sexually explicit entertainment, specifically, adult cabarets, adult stores, and adult theaters.  The establishments involved in the instant case were two "gentlemen clubs" (nude dancing establishments) and two adult bookstores.  

In their 10-count complaint plaintiffs challenged various provisions of the ordinance, asserting primarily that the provisions interfered with their constitutionally protected rights of expression under the first amendment.  One count asserted due process allegations.  Plaintiffs sought the invalidation of the ordinance and a permanent injunction enjoining defendant from enforcing the ordinance against them.  

Prior to filing an answer to plaintiffs' complaint, defendant filed a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2--619 (West 1996)), alleging that two of the plaintiffs, Baby Dolls and Video Magic, which were identified in the complaint as "sole proprietorships," should be stricken as plaintiffs.  Defendant asserted that, because "Baby Dolls" and "Video Magic" were simply trade names for the real parties in interest, the establishments lacked legal capacity to sue.  There is no indication in the record that plaintiffs ever responded to defendant's section 2--619 motion to dismiss or that the trial court ruled on this motion.

On the same date of the filing of its section 2--619 motion, defendant also filed a motion to dismiss pursuant to section 2--615 of the Code (735 ILCS 5/2--615 (West 1996)). In its section 2--615 motion defendant sought the dismissal of plaintiffs' cause of action as well as judgment on the pleadings.  Defendant alleged that counts I, II, and IV of the complaint failed to state a legally recognized cause of action and, therefore, should be dismissed under section 2--615(a).  735 ILCS 5/2–615(a) (West 1996).  Additionally, defendant asserted that, under section 2--615(e) (735 ILCS 5/2--615(e) (West 1996)), judgment should be entered in its favor on all counts because, even taking the facts plaintiffs pleaded as true, none of the counts stated a cause of action for which relief could be granted as a matter of law.  The trial court established a briefing schedule with respect to defendant's sections 2--615 and 2--619 motions.  Defendant filed its memorandum of law on the date established.  Plaintiffs requested and received three extensions of their date for filing their response to defendant's memorandum.

On the morning of the hearing on defendant's motions, plaintiffs' local counsel, Douglas Roberts, informed the trial court that plaintiffs' lead counsel, Michael Null, was not present.  Roberts explained that Null had phoned him saying that he had laryngitis, that Null had asked Roberts to seek a continuance of the hearing, and that Roberts had responded that he would not file a motion to continue without a doctor's excuse.  The court commented that, because Null had not filed his memorandum in a timely fashion, had asked for a number of continuances, and generally had been late on the few occasions he was present in court, it was not sympathetic to his absence.  The court further stated that it had gone to extreme efforts to schedule the case for hearing that day but that it would continue the case until the afternoon to allow Roberts to try to contact Null and inform him that the case was going to be heard at that time.

At the beginning of the afternoon session, Roberts presented a motion to continue and a faxed one-page document, bearing the stamped signature of "G. Berlin, M.D." and listing several of Null's medical conditions, including "diabetes mellitus," "congestive cardiomyopathy," and "neuropathy-truncal-peripheral." There was no mention of laryngitis.  The court commented that the note did not indicate that Null was suffering from any of the listed conditions that day or that he was hospitalized, incapacitated, or impeded from coming to court because of any of the conditions.  The court denied plaintiffs' motion to continue and proceeded with the hearing on defendant's section 2--615 motion to dismiss and for judgment on the pleadings.  As Roberts had not been responsible for or prepared plaintiffs' memorandum, he informed the court that he would not attempt to argue plaintiffs' position.  The court agreed that it would be unfair to require him to do so.  Defendant then presented its argument.  

At the conclusion of the hearing, the court found that the ordinance was content neutral because it was aimed at combating crime and other secondary effects associated with sexually oriented businesses.  The court further found that to pass the ordinance defendant was not required to identify specific secondary effects in Lake County but could rely on outside studies.  Additionally, the court found that the particular provisions challenged by plaintiffs were narrowly tailored (to serve a significant governmental interest) and left alternative avenues of activity.  The court concluded that the ordinance did not violate plaintiffs' constitutional rights of privacy or expression.  The court granted defendant's motion for judgment on the pleadings on each count of plaintiffs' complaint and made an express finding that there was no just reason to delay enforcement or appeal of its judgment.

Plaintiffs filed a timely notice of appeal.

On appeal, plaintiffs raise numerous issues based on one essential theory: 
whether the trial court erred in granting defendant's motion for judgment on the pleadings.  It is within this context that we address plaintiffs' arguments.

In deciding a section 2--615 motion for judgment on the pleadings (735 ILCS 5/2--615(e) (West 1998))
, the trial court must examine all pleadings on file, taking as true the well-pleaded facts set forth in the opposing party's pleadings and the reasonable inferences to be drawn therefrom (
Tim Thompson, Inc. v. Village of Hinsdale
, 247 Ill. App. 3d 863, 890 (1993)) and  determine whether a material factual dispute exists or whether the controversy can be resolved strictly as a matter of law (
TDC Development Corp. v. First Federal Savings & Loan Ass'n
, 204 Ill. App. 3d 170, 173 (1990)).  A judgment on the pleadings is proper only if questions of law and not fact exist after the pleadings have been filed.  
Millers Mutual Insurance Ass'n v. Graham Oil Co.
, 282 Ill. App. 3d 129, 134 (1996).  On review, this court also must determine whether any genuine issue of material fact exists and, if not, whether the prevailing party was entitled to judgment as a matter of law.  
Chicago Title & Trust Co. v. Steinitz
, 288 Ill. App. 3d 926, 934 (1997).  Therefore, our review of an appeal from a motion for judgment on the pleadings is 
de novo
.  
Chicago Title & Trust Co.
, 288 Ill. App. 3d at 934.

We begin our analysis by first noting that the type of nonobscene, sexually explicit expression that takes place at plaintiffs' adult cabarets and adult bookstores is subject to first amendment protection.  See, 
e.g.
, 
Barnes v. Glen Theatre, Inc.
, 501 U.S. 560, 566, 115 L. Ed. 2d 504, 511, 111 S. Ct. 2456, 2460 (1991) (nude dancing constitutes expressive conduct within the outer perimeters of the first amendment, though "only marginally so"); 
Kois v. Wisconsin
, 408 U.S. 229, 231-32, 33 L. Ed. 2d 312, 315-16, 92 S. Ct. 2245, 2246-47 (1972) (portrayal of sex in poem was insufficient reason to deny material constitutional protection of freedom of speech and press).  Nonetheless, first amendment protection does not exempt adult businesses dealing in sexually explicit expression from zoning and other licensing regulations and, therefore, the fact that these businesses are subject to such requirements is not a sufficient reason for invalidating the ordinances.  
Young v. American Mini Theatres, Inc.
, 427 U.S. 50, 62, 49 L. Ed. 2d 310, 321, 96 S. Ct. 2440, 2448 (1976).  

When the constitutionality of such ordinances is challenged, the court must determine whether the regulation is related to the suppression of expression.  
Texas v. Johnson
, 491 U.S. 397, 403, 105 L. Ed. 2d 342, 352, 109 S. Ct. 2533, 2538-39 (1989).  If the governmental purpose in regulating expression is unrelated to the suppression of that expression, then the regulation need only satisfy the "less stringent" standard announced in 
United States v. O'Brien
, 391 U.S. 367, 377, 20 L. Ed. 2d 672, 680, 88 S. Ct. 1673, 1679 (1968), for evaluating restrictions on symbolic speech.  
City of Erie v. Pap's A.M.
, 529 U.S. ____, ____, 146 L. Ed. 2d 265, 278, 120 S. Ct. 1382, 1391 (2000).  But if the governmental interest is related to the content of the expression, then the regulation must be justified under a more demanding standard than that set forth in 
O'Brien
.  
City of Erie
, 529 U.S. at ____, 146 L. Ed. 2d at 278, 120 S. Ct. at 1391.  Plaintiffs maintain that defendant's entire ordinance is "content-based," 
i.e.
, related to the suppression of the content of the expression, and therefore must be subjected to strict scrutiny.  Defendant argues that the ordinance is content neutral, 
i.e.
, not aimed at the content but at combating the secondary or detrimental effects of such expression, 
e.g.
, crime, public health, and safety problems.  Keeping in mind these positions and the foregoing principles, as well as the standards that apply to section 2--615 motions, we begin our review of plaintiffs' complaint.

In count I of their complaint plaintiffs alleged that, in setting forth the grounds for the regulation of adult businesses in its preamble to the ordinance, defendant had relied on studies conducted by other municipalities regarding adverse impacts associated with adult uses.  Plaintiffs asserted that, because their businesses had caused no harm to the county during their 15-year existence in the county, it was "wrong" for defendant to rely on studies from other locations as its basis for regulating adult businesses within the county.  

In count II, plaintiffs alleged that defendant could not demonstrate that the adverse impacts associated with sexually oriented business activities set forth in defendant's preamble to the ordinance were real.  Those adverse impacts included criminal activity, public health and safety risks, deterioration of residential neighborhoods, deterioration of other business and commercial uses, dehumanizing and distracting influences upon young people in particular, and diminution or destruction of families' enjoyment at public recreational areas, spiritual experience at places of worship, and solemn contemplation at cemeteries and similar facilities.  Plaintiffs asserted that defendant was attempting to regulate the content of plaintiffs' presumptively protected expression and that content-based regulations must promote a compelling interest and employ the least restrictive means to further the articulated interest; 
i.e.
, the regulations were subject to a "strict scrutiny" test.  

In terms of demonstrating that the secondary effects associated with sexually oriented business activities pose a threat, the governmental body need not " 'conduct new studies or produce evidence independent of that already generated by other cities'  to demonstrate the problem of secondary effects,  'so long as whatever evidence the [governmental body] relies upon is reasonably believed to be relevant to the problem that the [governmental body] addresses.' "  
Erie
, 529 U.S. at ____, 146 L. Ed. 2d at 283, 120 S. Ct. at 1395, quoting 
City of Renton v. Playtime Theatres, Inc.
, 475 U.S. 41, 51-52, 89 L. Ed. 2d 29, 40, 106 S. Ct. 925, 931 (1986).  Relying on this determination, defendant contends that it was entitled to rely on outside studies from other jurisdictions regarding the adverse secondary effects of secondary uses as evidence of the problem it was addressing when it enacted its ordinance.   

The preamble to the ordinance states:

"The County *** has reviewed and analyzed numerous studies, reports, articles, judicial decisions, and the experience and legislative findings of other counties and municipalities in the Chicago metropolitan region and around the country concerning impacts,  or 'secondary effects,' of sexually oriented businesses and the sale, distribution, and display of sexually oriented materials (collectively, 'Sexually Oriented Business Activities') on the areas in which such activities are located or take place."  Lake County, Ill., Preamble, Ordinance No. 6:1--15 (eff. February 11, 1998).

Additionally, the preamble states:

"[T]he County presently is engaged in law enforcement and judicial proceedings in response to prostitution and other criminal activity related to the operation of existing Sexually Oriented Business Activities, including the operation of Sexually Oriented Business Activities that allow and provide nude dancing and other similar conduct."  Lake County, Ill., Preamble, Ordinance No. 6:1--15 (eff. February 11, 1998).

Defendant maintains that these detailed recitals establish that it relied on outside studies in enacting its ordinance and that, based on 
Erie
 and 
Renton
, its reliance was reasonable and constituted a sufficient legislative basis for adopting the ordinance.  Therefore, defendant asserts, the ordinance demonstrates on its face that it had a substantial governmental interest in regulating adult uses.  

Plaintiffs counter that, if we accept defendant's position that the evidentiary foundation for an ordinance can be proved simply by looking at the recitals in the preamble of an ordinance, no one would ever be able to challenge whether a governing body had a legitimate basis for enacting an ordinance.  We agree because, under defendant's theory, the statements of fact in the recitals of the preamble regarding the legislative basis for the adoption of the ordinance would always be presumed to be true.  The legislative body would never be required to produce evidence to support its statements in a preamble that it was not targeting the message conveyed by adult use establishments but, rather, was combating the undesirable secondary effects of such businesses.

None of the cases cited by defendant in support of its position that a governmental body can rely on outside studies, judicial decisions, and the experiences of other governments in other jurisdictions in adopting its legislation were decided on a motion for judgment on the pleadings as occurred here.  Nor has our research revealed any cases of this nature.  In every case relied upon by defendant, the affected party had an opportunity to go to trial or to test the assertions of governmental interests in an evidentiary proceeding.  This was true even in 
Erie
 where, as pointed out in the Supreme Court's opinion, the affected party had ample opportunity to contest the city council's findings about secondary effects, including in-state proceedings, although it never chose to do so.  
Erie
, 529 U.S. at ___, 146 L. Ed. 2d at 284, 120 S. Ct. at 1396.

Moreover, our research reveals that, in cases where statements within a preamble of an ordinance have been determined to constitute sufficient evidence of a governing body's legislative basis for enacting an ordinance pertaining to adult business uses, courts typically have conducted evidentiary hearings where the governing bodies produced evidence in support of the conclusions set forth in their preambles.  For
 example, in 
Oasis Goodtime Emporium I, Inc. v. De Kalb County
, 272 Ga. 887, ___ S.E.2d ___ (2000), the preamble to a county ordinance prohibiting the sale of alcohol at nude bars indicated that the county board of commissioners had relied upon the experience of other urban counties and municipalities, which the board found relevant to the problems faced by the county.  However, the board also relied upon a review of a county police department report summarizing the criminal activity surrounding the nine existing license holders within the county that sold alcohol and provided sexually explicit entertainment.  Based on this information, the board found that such establishments produced certain undesirable secondary effects, and it enacted its ordinance.

In 
Oasis
, the plaintiffs challenged the constitutionality of the ordinance and obtained a temporary restraining order (TRO).  Following a hearing conducted on the TRO and on an interlocutory injunction plaintiffs sought, the trial court dissolved the TRO and denied the injunctive relief, finding no substantial likelihood existed that the plaintiffs would succeed on their challenge to the ordinance.  In reaching its determination the trial court had before it affidavits from the board members who enacted the ordinance declaring that, in voting in favor of the ordinance, they had relied upon the testimony and evidence presented at a public hearing as well as on relevant studies from other jurisdictions, on the problems faced by the county, and on the problems addressed by the ordinance.  Additionally, the court had evidence of the specific studies relied upon by the board.

On review, the supreme court of Georgia determined that the county met its burden of proving that it considered specific evidence of the pernicious secondary effects of adult entertainment establishments by producing evidence of the specific studies it relied upon and its reasonable belief in the relevance of those studies.  
Oasis
, 272 Ga. at 890, ___ S.E.2d at ___.  

Following a bench trial, the district court in 
Lakeland Lounge of Jackson, Inc. v. City of Jackson
, 973 F.2d 1255 (5th Cir. 1992), held that the city council had an insufficient factual predicate by which to base a zoning ordinance, restricting adult businesses to certain areas of the city, upon secondary effects.  The district court had determined that, although the preamble of the ordinance took note of the secondary effects, the city did not establish whether the existence of secondary effects had a basis in fact or whether the city had considered that factual basis in passing the ordinance. 
Lakeland Lounge of Jackson, Inc.
, 973 F.2d at 1258.   

The language of the preamble to the ordinance stated that the planning board and city council "find that there is substantial evidence, including numerous studies, reports, and findings of the potential harmful effect of adult entertainment uses made by other cities, experts, city planners, etc., which document that such uses adversely affect property values, cause an increase in crime, encourage businesses to move elsewhere, and contribute to neighborhood blight."  
Lakeland Lounge of Jackson, Inc.
, 973 F.2d at 1259.  The Fifth Circuit reversed the trial court, finding that the language of the preamble, alone, might not be sufficient to show that the ordinance was drafted with specific attention to secondary effects.  But, taken together with evidence presented at trial that the drafters of the ordinance had relied upon studies of secondary effects and that the majority of the city council members had received some information about secondary effects during an open hearing of the planning board, the preamble language was sufficient to establish the city council's awareness of the studies upon which the drafters relied when framing the ordinance.  
Lakeland Lounge of Jackson, Inc.
, 973 F.2d at 1258-59.

In 
Dima Corp. v. Town of Hallie
, 185 F.3d 823 (7th Cir. 1999), the preamble to an ordinance limiting the hours of operation for adult bookstores cited numerous secondary effects it was designed to combat.  The Seventh Circuit determined that the lower court had correctly concluded that the municipality's ordinance did not contain any evidence to support its proffered justification that it was enacted to combat potential undesirable secondary effects and that "its conclusory assertions regarding its goals and its effect [were] insufficient by themselves to survive a First Amendment challenge because they [were] not 'evidence' as the court required in 
Renton
."  
Dima
, 185 F.3d at 829.  The court went on to say:

"The Third Circuit succinctly stated the appropriate burden in this kind of case: '[O]ur First Amendment jurisprudence requires that the [municipality] identify the justifying secondary effects with some particularity, that [it] offer some record support for the existence of those effects and for the Ordinance's amelioration thereof, and that the plaintiffs be afforded some opportunity to offer evidence in support of the allegations of their complaint.' " 
Dima
, 185 F.3d at 829, quoting 
Phillips v. Borough of Keyport
, 107 F.3d 164, 175 (3d Cir. 1997).

Nonetheless, because the municipality apparently presented evidence that it had relied on the experience of West Allis, Wisconsin, and the factual record supporting that experience, that West Allis had analyzed studies from other cities in enacting its ordinance, and that the municipality's ordinance was essentially copied from the one enacted by West Allis, the court determined that the municipality had met its burden of making a record to justify its ordinance's limitation on hours of operation, although "only minimally" so.  
Dima
, 185 F.3d at 830-31.  The court commented further that, although the record to support the municipality's justification of combating crime was "fairly meager," it was sufficient in this case because 
Dima
's first amendment challenge was limited to the ordinance's hours of operation and this limitation did not significantly impair the bookstore's business.  However, the court stated, "[W]e would expect a municipality defending a more substantial set of regulations to create a more substantial record in support of summary judgment."  
Dima
, 185 F.3d at 831.

In the present case no evidentiary hearing was conducted by virtue of defendant's act of bringing a motion for judgment on the pleadings.  Nonetheless, without hearing any evidence the court concluded that the purpose of the ordinance was to combat the adverse secondary effects of adult businesses.  To reach this conclusion the court had to presume that the statements in the preamble regarding the legislative basis for the adoption of the ordinance constituted a sufficient evidentiary foundation to advance a substantial governmental interest and to justify the ordinance's adoption.  In so concluding, the trial court went outside the pleadings and made a value judgment on the merits rather than merely deciding, based on the allegations in plaintiffs' complaint, whether a cause of action had been stated.   The reasonable inference to be drawn from the allegations set forth in plaintiffs' counts I and II, pertaining to defendant's justification in enacting the ordinance, is that defendant could not prove that the adverse secondary effects recited in the ordinance's preamble were real.  In other words, defendant could not demonstrate that the ordinance advanced a substantial governmental interest, especially as applied to plaintiffs, whose businesses had operated for 15 years in the county without causing any adverse secondary effects.  We note that defendant maintains that an allegation within plaintiffs' complaint, stating that one of their employees recently committed a sex offense, constitutes an additional evidentiary basis for its ordinance.  However, defendant ignores that the allegation also states that plaintiffs were not found to be accountable for the offense.  One sex offense for which an adult business was not held accountable does not justify all the regulations in defendant's ordinance.  Moreover, the fact that an employee was charged for a sex offense demonstrates that the county has a tool to use in addressing the governmental interest at issue.   Defendant relies on 
Renton
 to maintain that a legislative body does not have to wait until a problem occurs before enacting an adult use ordinance.  However, this conclusion by the 
Renton
 Court has to be considered in the context of that case.  In 
Renton
 there were no adult businesses in existence at the time the city enacted its ordinance.  Consequently, the Supreme Court determined that the City of Renton could rely on the experiences of other communities, in particular those of Seattle, which had conducted detailed studies of adult use businesses, to adopt its ordinance.  Here, however, where plaintiffs had been in business for 15 years at the time defendant enacted its ordinance, plaintiffs' allegation that defendant wrongly relied on outside studies instead of considering plaintiffs' existing businesses to determine whether such businesses cause adverse secondary effects presented an issue of fact.  
  

As a factual dispute exists as to whether the recitals in the preamble of defendant's ordinance establish that the ordinance was enacted to advance a substantial governmental interest, 
i.e.
, to combat the adverse secondary effects of adult use businesses, a judgment on the pleadings was not proper.  Given our conclusion, we need not consider the other counts of plaintiffs' complaint, which challenge the constitutionality of specific restrictions of the ordinance, because the constitutionality of those restrictions depends upon whether defendant can meet its burden of establishing that the purpose of the ordinance was to combat harmful secondary effects.   

Accordingly, for the reasons stated, the judgment of the circuit court of Lake County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

McLAREN and HUTCHINSON, JJ., concur.