# In the
# United States Court of Appeals
## For the Seventh Circuit

---

No. 05-4630

FORTY ONE NEWS, INC.,

*Plaintiff-Appellant,*

*v.*

COUNTY OF LAKE,

*Defendant-Appellee.*

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 7310—**Elaine E. Bucklo**, *Judge.*

---

ARGUED OCTOBER 31, 2006—DECIDED JUNE 27, 2007

---

Before POSNER, WOOD, and EVANS, *Circuit Judges.*

WOOD, *Circuit Judge.* Forty One News, Inc. ("41 News") is the proprietor of an adult book and video store in Lake County, Illinois; the store is called 41 Books. Lake County, like many other localities, has special regulations pertaining to purveyors of "adult" content; like many subjects of those regulations, 41 News objects to them. One way it has voiced its objections is through this lawsuit, which was brought under 42 U.S.C. § 1983 to enjoin Lake County from applying Lake County Ordinance 6:1-15 (eff. Oct. 9, 2001) (the "Adult Use Ordinance") to it. In 41 News's opinion, the County's ordinance violates the First and Fourteenth Amendments of the U.S. Constitution. The rub is this: at the relevant time, there was a

quasi-criminal enforcement proceeding pending in the Circuit Court of Lake County against 41 News for failure to comply with the Ordinance. Even though the latter action was commenced after 41 News filed this lawsuit, the district court dismissed the § 1983 suit under the abstention doctrine of *Younger v. Harris*, 401 U.S. 37 (1971). We agree with the district court that *Younger* abstention is appropriate and therefore affirm.

**I**

Hoping to regulate and license "adult cabarets," "adult stores," and "adult theaters," Lake County adopted the first version of its Adult Use Ordinance on February 10, 1998. Almost immediately, 41 News joined with another adult bookstore and two adult cabarets in filing a state court action to block enforcement of the Ordinance. See *XLP Corp. v. Lake County*, 98 CH 1106 (Ill. Cir. Ct., Lake County). Although the Circuit Court of Lake County initially granted judgment on the pleadings in favor of the County, the Illinois Appellate Court reversed. The Appellate Court found that there was a factual dispute "as to whether the recitals in the preamble of defendant's ordinance establish that the ordinance was enacted to advance a substantial government interest, *i.e.*, to combat the adverse secondary effect of adult use businesses . . . ." *XLP Corp. v. County of Lake*, 743 N.E.2d 162, 170 (Ill. App. Ct. 2000). In light of the plaintiffs' allegations that their businesses had operated for 15 years without causing any secondary effects, the court concluded that the trier of fact should not have presumed that the Ordinance's preamble (finding to the contrary) was enough to refute the plaintiffs' position. It accordingly remanded the case for a hearing, at which Lake County would have the burden to establish that the purpose of the statute was to combat harmful secondary effects and that such effects existed. *Id.*

In light of court decisions that called the constitutionality of the Adult Use Ordinance into question, the County amended it on October 9, 2001, passing the version that forms the basis for this lawsuit. After extensive motion practice and other delays, a bench trial was calendered for November 17, 2003. Just before the trial was to begin, on November 11, 41 News moved to dismiss the case; the court granted this motion without prejudice three days later. (As the court had already dismissed the other adult bookstore from the case, the only remaining plaintiffs were adult cabarets.) The trial proceeded without 41 News as a plaintiff and ended with a verdict upholding the constitutionality of the Adult Use Ordinance.

Having extricated itself from the state court suit, 41 News filed its complaint in federal court on November 12, 2004. Lake County initially responded with a motion to dismiss under FED. R. CIV. P. 12(b)(6) on *res judicata* grounds. The district court denied this motion, finding that on the record presented it could not "determine that parties were in privity or that the issues litigated in the state suit are identical to those at issue here given the difference in type of business." Order of May 6, 2005. (Technically, of course, *res judicata* is an affirmative defense for the defendant, see FED. R. CIV. P. 8(c), and thus cannot be raised until a motion for judgment on the pleadings under Rule 12(c), but in light of the court's ruling we need not pursue that matter further.)

After Lake County's motion to dismiss in the federal suit was denied, events occurred in state court that precipitated a second motion to dismiss, this time on *Younger* abstention grounds. On May 26, the Illinois Appellate Court ruled that the Adult Use Ordinance was constitutionally permissible, affirming the verdict of the district court. See *XLP Corp. v. County of Lake*, 832 N.E.2d 480 (Ill. App. Ct. 2005). With this victory in hand, Lake County promptly filed an enforcement action

against 41 News for operating an adult establishment without a license. See *County of Lake v. Forty One Books, Inc.*, 05 CH 939 (Ill. Cir. Ct., Lake County). (While this appeal has been pending, the County prevailed in its enforcement suit in the state trial court, which found that 41 News was operating an adult store in violation of the ordinance and enjoining it from so doing. See Order of Sept. 21, 2006. 41 News has appealed that decision.)

Based on the state court enforcement action, Lake County moved on June 15, 2005, to dismiss the federal action on *Younger* abstention grounds. This time, the district court granted its motion, concluding that "[a]bstention is appropriate in this case given the pending state action. Nothing of substance has occurred in the federal action. Plaintiff will be able to litigate its constitutional claims in the state action. *Manheim Video, Inc. v. County of Cook*, 884 F.2d 1043, 1045 (7th Cir. 1989)." Order of Dec. 12, 2005.

## II

"We review *Younger* abstentions under a *de novo* standard of review." *Crenshaw v. Supreme Court of Indiana*, 170 F.3d 725, 728 (7th Cir. 1999).

"The rule in *Younger v. Harris* is designed to 'permit state courts to try state cases free from interference by federal courts.'" *Hicks v. Miranda*, 422 U.S. 332, 349 (1975) (quoting *Younger*, 401 U.S. at 43). *Younger* abstention ensures that individuals or entities who have violated state laws cannot seek refuge from enforcement of those laws behind the equitable powers of the federal courts: "[I]f a person is believed to have violated a state law, the state has instituted a criminal disciplinary or other enforcement proceeding against him, and he has a federal defense, he cannot scurry to federal court and plead

that defense as a basis for enjoining the state proceeding." *Nader v. Keith*, 385 F.3d 729, 732 (7th Cir. 2004). Limiting the intervention of the federal courts preserves the "institutional autonomy of state judicial processes by limiting attempts by litigants to obtain federal declaratory or injunctive relief on constitutional grounds where such relief may interfere with certain types of ongoing state proceedings in which they are involved, and which provide an adequate opportunity to raise the constitutional claims." Laurence H. Tribe, *American Constitutional Law* § 3-28, at 569-70 (3d ed. 2000).

*Younger* abstention is appropriate only when there is an action in state court against the federal plaintiff and the state is seeking to enforce the contested law in that proceeding. While the doctrine was initially limited in its application to pending state *criminal* prosecutions, its scope has been expanded to apply to state judicial and administrative proceedings in which important state interests are at stake. See Erwin Chemerinsky, *Federal Jurisdiction* § 13.3.3-13.3.4, at 817-27 (4th ed. 2003). "The policies underlying *Younger* are fully applicable to non-criminal judicial proceedings when important state interests are involved. The importance of the state interest may be demonstrated by the fact that the non-criminal proceedings bear a close relationship to proceedings criminal in nature . . . ." *Middlesex County Ethics Comm'n v. Garden State Bar Assoc.*, 457 U.S. 423, 432 (1982) (internal citations omitted). When the state proceeding is civil, *Middlesex County Ethics Comm'n* requires federal courts to "abstain from enjoining ongoing state proceedings that are (1) judicial in nature, (2) implicate important state interests, and (3) offer an adequate opportunity for review of constitutional claims . . . ." *Majors v. Engelbrecht*, 149 F.3d 709, 711 (7th Cir. 1998). There is no question that the quasi-criminal prosecution of the violation of an ordinance, see *Ciotti v. County of*

*Cook*,712 F.2d 312, 313 (7th Cir. 1983), is an adequate state proceeding for the purposes of *Younger*: we have held so in the past, *e.g.*, *Mannheim Video, Inc. v. County of Cook*, 884 F.2d 1043, 1044 (7th Cir. 1989); *Ciotti*, 712 F.2d at 313, and 41 News offers no argument otherwise.

The existence of an adequate state enforcement action is necessary for *Younger* abstention, but it is not sufficient if, as here, the filing of the federal action preceded the state suit. (This reflects a rough first-in-time principle that courts normally follow. 41 News filed this suit on November 12, 2004; Lake County filed the enforcement action seven months later, on June 13, 2005.) When the federal suit is filed first, the court must also consider the progress of the federal action before deciding whether abstention is appropriate. See *Ciotti*, 712 F.2d at 313. Here, 41 News claims that the federal action had advanced enough that the district court erred by deciding to yield to the state proceeding.

Indeed, 41 News appears to go further and to argue that federal courts should never abstain if the state enforcement proceeding is filed after the federal suit. That argument, however, is a non-starter after *Hicks v. Miranda*, *supra*. As the Court concluded in *Hicks*, "where state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of *Younger v. Harris* should apply in full force." 422 U.S. at 349. *Hicks* went on to explain that "the district court must consider the progress of the federal action. The district court must abstain if there have been no 'proceedings of substance on the merits . . . in the federal court.'" *Ciotti*, 712 F.2d at 313 (quoting *Hicks*, 422 U.S. at 349).

41 News makes much ado over the progress that had been achieved in its federal case, alternately submitting

that the case has progressed beyond an embryonic stage and that Lake County prevented the suit from significantly progressing through its motions to dismiss. In support of the former point, it argues that the briefing before the district court "involved issues significantly more complex than mere jurisdictional or pleading concerns" and "went into great depth regarding the merits of the case, evaluated alleged 'claim preclusion,' and included an extensive discussion of each and every 'claim,' and the complex constitutional issues involved therein." In support of the latter, 41 News comes close to recognizing that its case has hardly advanced, but it complains that dismissal would be unjust because it would "allow the County to prevent the 'maturation' of the case through . . . their successive Motions to Dismiss and then seek to have the case subject to abstention on the basis of any argument that the case was 'embryonic.'"

We have examined the federal case independently, and we have no trouble concluding that nothing important relating to the merits has happened yet. The parties have not briefed and the court did not consider any issue related to the merits; no discovery has occurred. The briefs that have been filed dealt with Lake County's *res judicata* and *Younger* arguments. The district court's denial of the County's first motion to dismiss and its grant of the second "was not a decision relating to the underlying issue in the case—the constitutionality of the ordinance." *Ciotti*, 712 F.2d at 314. Like a finding about standing, see *id.*, or a ruling on a motion to dismiss for failure to state a claim, see *Mannheim Video*, 884 F.2d at 1045-46, the preliminary matters addressed here were not sufficiently related to the merits to satisfy the standard in *Hicks*.

The only question that remains is whether 41 News had an adequate opportunity to raise its constitutional challenge to the Adult Use Ordinance in the state enforcement

action. "Abstention certainly accomplishes nothing if the federal plaintiff cannot even raise its federal constitutional challenges in the state proceeding; it merely delays the inevitable federal action following the state proceeding and postpones the possible vindication of the federal plaintiff's constitutional rights." *Id*. at 1045. Although 41 News has a few veiled allusions to "state tribunal bias and prejudice in prejudging a controversy," it advances no reason to find that the state court did not provide an adequate opportunity for it to raise its constitutional challenges.

We recognize that 41 News would prefer to be in federal court, understandably enough since the state courts have already upheld the ordinance, but its preferences and the earlier rulings of the state courts carry no weight under *Younger*. Denial of a preferred federal forum for federal claims is often the result of the application of *Younger* abstention, see Tribe, *American Constitutional Law* § 3-30, at 584, as well as other doctrines promoting comity. The Supreme Court has "repeatedly held, to the contrary, that issues actually decided in valid state-court judgments may well deprive plaintiffs of the 'right' to have their federal claims relitigated in federal court. This is so even when the plaintiff would have preferred not to litigate in state court, but was required to do so by statute or prudential rules." *San Remo Hotel, L.P. v. City and County of San Francisco, Cal.*, 545 U.S. 323, 342 (2005) (internal citations omitted).

Ultimately, as this court declared in *Ciotti*, "'one who decides to violate a state law that he believes to be unconstitutional may find that he has thereby submitted himself to the jurisdiction of the state courts.' This sometimes is true even if the violation follows the filing of the federal action." 712 F.2d at 315 (quoting *People of the State of Illinois v. General Electric Co.*, 683 F.2d 206, 212 (7th

Cir. 1982)). Like other plaintiffs whose efforts to choose a federal court run up against the federalism concerns expressed in *Younger*, 41 News's "remedy is to plead the unconstitutionality of the statute as a defense in the state court proceeding." *Hoover v. Wagner*, 47 F.3d 845, 848 (7th Cir. 1995). (Now that it has done so and lost in the first round, the preclusion issues that Lake County was trying to raise earlier will become relevant; because we decide this appeal on the basis of *Younger*, however, we have no additional comment on the County's alternative arguments.)

We address only one final point. In its reply brief, 41 News, perhaps recognizing that this case falls squarely within the ambit of the *Younger* doctrine, argues that we must balance a variety of factors in deciding whether the district court should abstain. This claim is misplaced. It is confusing the doctrine associated with *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), with *Younger*. See also *Moses H. Cone Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 15-16 (1983); *Cigna HealthCare of St. Louis v. Kaiser*, 294 F.3d 849, 852 (7th Cir. 2002). Unlike *Colorado River* abstention, which is "disfavored" even where the necessary parallel state proceeding exists, see *Kaiser*, 294 F.3d at 852, "*Younger v. Harris* and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex County Ethics Comm'n*, 457 U.S. at 431.

\*   \*   \*

The judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—6-27-07