In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-3900

FREEEATS.COM, INC.,

*Plaintiff-Appellant*,

*v.*

STATE OF INDIANA and STEVE CARTER,
Attorney General,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 06 C 1403—**Larry J. McKinney**, *Chief Judge.*

ARGUED APRIL 3, 2007—DECIDED SEPTEMBER 12, 2007

Before MANION, EVANS, and WILLIAMS, *Circuit Judges.*

MANION, *Circuit Judge.* FreeEats.com, Inc., a provider
of prerecorded telephonic messages, filed in federal district
court a motion for a preliminary injunction and a declara-
tory judgment seeking to prevent Indiana from enforcing
its statute prohibiting the use of automatic dialing ma-
chines to send prerecorded messages to Indiana tele-
phone subscribers. Three days earlier, Indiana had filed
an action in an Indiana state court against one of FreeEats'
clients, the Economic Freedom Fund, and numerous then-
unknown prerecorded telephonic message providers, to

enforce the Indiana statute. Based on its first-filed state court action, Indiana moved the district court to abstain from exercising jurisdiction pursuant to the principles of *Younger v. Harris*, 401 U.S. 37 (1971), and to stay the case pending the resolution of its motion. The district court denied both of Indiana's motions, as well as FreeEats' motion for a preliminary injunction. Indiana and FreeEats cross-appealed. We reverse the district court's denial of Indiana's motion to dismiss pursuant to the *Younger* abstention doctrine, and vacate its denial of FreeEats' motion for a preliminary injunction.

## I.

FreeEats is a Virginia corporation that uses prerecorded telephonic messages to poll households, identify political supporters, deliver political advocacy messages, and encourage supporters to go to the polls to vote for particular candidates. It makes interstate telephone calls into all fifty states. If a FreeEats call is not answered by a live person, FreeEats will attempt to call the number again up to three times.

Prior to the November 2006 elections, the Economic Freedom Fund hired FreeEats to make prerecorded telephone calls to Indiana residents from the FreeEats call center located in Virginia. In early September 2006, FreeEats began making calls on behalf of the Economic Freedom Fund to Indiana telephone subscribers in support of various congressional candidates. On September 18, 2006, Indiana filed an action in Indiana state court[1] seeking an injunction and civil penalties against the Economic

---

[1] *Indiana v. Economic Freedom Fund*, No. 07C01-0609-MI-0425 (Brown County Cir. Ct. filed Sept. 18, 2006).

Freedom Fund for violating Indiana's Automated Dialing Machine Statute (the "ADMS"), Ind. Code § 24-5-14-5,[2] which generally prohibits the use of automatic dialing machines to send prerecorded messages to Indiana telephone subscribers. Indiana's complaint did not name FreeEats, but it did name several "John Does" who it claimed were responsible for making the offending telephone calls.

Three days later, on September 21, 2006, FreeEats filed in federal district court this action against both Indiana and the Indiana Attorney General, seeking injunctive and declaratory relief to prohibit Indiana from enforcing the ADMS. Specifically, FreeEats claimed that Indiana should be enjoined from enforcing the ADMS because: (1)

---

[2] In 1988, and prior to Congress' passage of the Telephone Consumer Production Act ("TCPA"), 47 U.S.C. § 227, Indiana enacted its own statutory regulations pertaining to automatic dialing machines, the ADMS. The ADMS prohibits commercial telephone solicitation using automatic dialing-announcing devices to Indiana telephone subscribers, unless "the subscriber knowingly or voluntarily requested, consented to, permitted, or authorized receipt of the message," or "the message is immediately preceded by a live operator who obtains the subscriber's consent before the message is delivered." Ind. Code § 24-5-14-5(b). The ADMS allows the use of automatic dialing-announcing devices in only three instances: (1) for school districts to inform students, parents, or employees; (2) for Indiana telephone subscribers with whom the caller has a current business or personal relationship; and (3) for employers advising their employees of work schedules. Ind. Code § 24-5-14-5(a). Unlike the TCPA, the ADMS does not contain a broad exclusion exempting any non-commercial calls, including calls delivering political messages.

federal law preempts it; (2) it violates the Commerce Clause; and (3) it violates the First Amendment. The next day, Indiana moved to amend its state court complaint to name FreeEats as a defendant, and to stay the federal proceedings pending the resolution of the state case pursuant to the principles that the Supreme Court set forth in *Younger v. Harris*, 401 U.S. 37 (1971).

On October 24, 2006, the district court denied Indiana's and the Indiana Attorney General's motion to stay. It also denied their motion to dismiss pursuant to the *Younger* abstention doctrine, upon finding that this case involves important federal issues that require urgent attention in light of the then-approaching 2006 congressional election. Additionally, the district court denied FreeEats' motion for a preliminary injunction based on its finding that FreeEats had not shown a likelihood of success on the merits on any of its three claims. Specifically, it first found that FreeEats was unlikely to prevail on its preemption claim, because federal law, and in particular the TCPA, did not preempt the ADMS. The district court reasoned that the TCPA's savings clause allows the states to enact stricter regulations than the TCPA's baseline federal standards, including regulations impacting interstate calls coming into a state. Second, the district court found that FreeEats was unlikely to prevail on its Commerce Clause claim, because the ADMS does not impose a clearly excessive burden on interstate commerce in relation to the putative local benefits of protecting residential privacy.[3] Third, the district court found that FreeEats was unlikely to prevail on its First Amendment claim, because the

---

[3] On appeal, FreeEats does not challenge the district court's findings regarding its Commerce Clause claim.

ADMS is content neutral, it is narrowly tailored to achieve Indiana's interest in protecting residential privacy, and it leaves open alternative channels for communication. In particular, the district court pointed out that the ADMS does not ban FreeEats from delivering its messages to Indiana residents via telephone; rather, it merely requires FreeEats to use a live operator to obtain consent before playing its prerecorded messages. The district court also noted that the ADMS does not impose any limitations on other traditional forms of political speech, such as door-to-door campaigning, bulk mailings, or posting signs.

FreeEats appealed the district court's denial of its motion for a preliminary injunction, and Indiana cross-appealed the district court's denial of it motion to dismiss pursuant to the *Younger* abstention doctrine. FreeEats then moved the state court to stay its proceeding pending this court's decision. On December 11, 2006, the state court denied FreeEats' motion and ordered discovery to commence. As of the date of publication, the state action was ongoing. Both the Economic Freedom Fund and FreeEats have moved for partial summary judgment, but the state court has yet to rule on their motions.[4]

---

[4] The Sept. 7, 2007, docket sheet for the Indiana state case indicates that the Economic Freedom Fund and FreeEats moved for partial summary judgment on June 20, and July 10, respectively; Indiana responded on July 20; EFF and FreeEats filed an unopposed motion for oral argument on July 26; oral argument has been set for Sept. 7, 2007.

II.

As a threshold matter, we must address Indiana's claim on cross-appeal that the district court should have abstained from exercising subject matter jurisdiction over this matter. We review de novo a district court's decision to decline to abstain from exercising jurisdiction pursuant to the *Younger* abstention doctrine. *Forty One News, Inc. v. County of Lake*, 491 F.3d 662,665 (7th Cir. 2007) (citations omitted).[5] *Younger* generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings. *Younger,* 401 U.S. 37, 43-44. *See also Forty One News, Inc.*, 491 F.3d at 665 ("*Younger* abstention is appropriate only when there is an action in state court against the federal plaintiff and the state is seeking to enforce the contested law in that proceeding."). "The rule in *Younger v. Harris* is designed to permit state courts to try state cases free from interference by federal courts." *Id.* (quotations and citations omitted). *See also Younger*, 401 U.S. at 43. The *Younger* principles of abstention apply both to claims based on constitutional challenges, as well as to those based on federal preemption challenges. *See New Orleans Public Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 365 (1989).

The Court's holding in *Younger* "was based partly on traditional principles of equity, but rested primarily on the

---

[5] While the *Younger* abstention doctrine originated in context of criminal prosecutions, it "has since been expanded beyond criminal prosecutions to various civil proceedings in state court implicating important state interests.'" *Ramsden v. AgriBank, FCB*, 214 F.3d 865, 871 (7th Cir. 2000) (quoting *Trust & Inv. Advisers, Inc. v. Hogsett*, 43 F.3d 290, 294-95 (7th Cir. 1994)).

even more vital consideration of comity." *New Orleans Public Serv., Inc.*, 491 U.S. at 364 (internal quotations and citations omitted). The *Younger* Court defined comity as:

> [A] proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. This, perhaps for lack of a better and clearer way to describe it, is referred to by many as 'Our Federalism,' and one familiar with the profound debates that ushered our Federal Constitution into existence is bound to respect those who remain loyal to the ideals and dreams of 'Our Federalism.' The concept does not mean blind deference to 'States' Rights' any more than it means centralization of control over every important issue in our National Government and its courts. The Framers rejected both these courses. What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States. It should never be forgotten that this slogan, 'Our Federalism,' born in the early struggling days of our Union of States, occupies a highly important place in our Nation's history and its future.

*Younger*, 401 U.S. at 44-45. Accordingly, *Younger* and its progeny "require federal courts to abstain from enjoining ongoing state proceedings that are (1) judicial in nature, (2)

implicate important state interests, and (3) offer an adequate opportunity for review of constitutional claims, (4) so long as no extraordinary circumstances—like bias or harassment—exist which auger against abstention." *Majors v. Engelbrecht*, 149 F.3d 709, 711 (7th Cir. 1998) (citing *Middlesex County Ethics Comm. v. Garden State Bar Assoc.*, 457 U.S. 423, 429 (1982)). *See also Gen. Auto Serv. Station LLC v. City of Chicago*, 319 F.3d 902, 904-05 (7th Cir. 2003) (stating that "except in extraordinary situations, a federal court may not enjoin ongoing state proceedings that arise out of important state interests, if the litigant has an adequate opportunity to present its constitutional arguments in the state forum").

There is no dispute that this case satisfies the first three factors for abstention under *Younger*. First, the state proceedings are judicial in nature as Indiana filed in the Brown Country Circuit Court its complaint against the Economic Freedom Fund and FreeEats alleging violations of the ADMS. Second, Indiana's complaint clearly implicates an important state interest, specifically the preservation of residential privacy as expressed by the Indiana legislature in its passage of the ADMS. Third, FreeEats may potentially avail itself of the same remedies in either the Indiana state court or the district court for its claims that the ADMS is preempted by federal law and unconstitutional. Accordingly, this case qualifies for abstention.

Despite the fact that the *Younger* factors all favor abstention, the district court found that extraordinary circumstances—the then rapidly approaching 2006 congressional elections—justified its exercise of federal jurisdiction. The party claiming extraordinary circumstances must demonstrate their existence. *Green v. Benden*, 281 F.3d 661, 667

(7th Cir. 2002) (citing *Ramsden*, 214 F.3d at 871). The Supreme Court has pointed out that such a determination must be made on a case-by-case basis:

> The very nature of "extraordinary circumstances," of course, makes it impossible to anticipate and define every situation that might create a sufficient threat of such great, immediate, and irreparable injury as to warrant intervention in state [ ] proceedings. But whatever else is required, such circumstances must be "extraordinary" in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation.

*Kugler v. Helfant*, 421 U.S. 117, 124-25 (1975) (footnote omitted).[6] *See also Arkebauer v. Kiley*, 985 F.2d 1351, 1361 (7th Cir. 1993) (recognizing that the extraordinary circumstances exception "is a nebulous one"). The Court has stated that a district court should not abstain under *Younger* where: (1) the pending state proceeding was motivated by a desire to harass or is conducted in bad faith, *see Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975); *see also Ramsden*, 214 F.3d at 871; or (2) the plaintiff has demonstrated " 'an extraordinarily pressing need for immediate equitable relief' " that, if not granted, will irreparably injure the plaintiff, *see Moore*, 442 U.S. at 433 (quoting *Kugler*, 421 U.S. at 124-25)); *see also Younger*, 401 U.S. at 46 (noting that even irreparable injury is insufficient unless it is "both great and immediate"). *Brunken v. Lance*, 807 F.2d 1325, 1331 (7th Cir. 1986) (discussing the two exceptions to

---

[6] While *Kugler* spoke in the context of criminal prosecutions, the Court has held that the same standard applies in the civil context. *Moore v. Sims*, 442 U.S. 415, 423 (1979).

the *Younger* doctrine).[7] We consider each of these excep-
tions in turn.[8]

First, we must determine whether the pending state
proceeding was motivated by a desire to harass or is

---

[7] Since the genesis of the *Younger* abstention doctrine over
thirty-five years ago, the Supreme Court has provided only
two examples of circumstances that would meet this high
standard: (1) when a state statute is " 'flagrantly and patently
violative of express constitutional prohibitions in every clause,
sentence and paragraph, and in whatever manner and against
whomever an effort might be made to apply it,' " *Younger*, 401
U.S. at 53-54 (quoting *Watson v. Buck*, 313 U.S. 387, 402 (1941));
and (2) when the state administrative agency "was incompetent
by reason of bias to adjudicate the issues pending before
it," *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973). Neither of
those scenarios is present in this case. First, the ADMS is not
flagrantly and patently violative of express constitutional
prohibitions in its every clause, sentence and paragraph, and
in whatever manner and against whomever an effort might
be made to apply it. In fact, the only appellate courts to consider
statutes similar to the ADMS have upheld them, including
one in which FreeEats was a defendant. *See generally North
Dakota v. FreeEats.com, Inc.*, 712 N.W.2d 828 (N.D. 2006) (up-
holding state telemarketing statute from federal preemption
challenge); *Utah Div. of Consumer Prot. v. Flagship Capital*, 125
P.3d 894 (Utah 2005) (same). Second, as discussed below,
FreeEats makes no allegations that the Indiana state court
was incompetent by reason of bias to adjudicate the issues
pending before it.

[8] While this circuit generally has considered both of these
exceptions to fall within the rubric of "extraordinary circum-
stances," some of our sister circuits have treated them as two
separate exceptions: (1) bad faith; and (2) extraordinary circum-
stances. *See, e.g.*, *Diamond "D" Constr. Corp. v. McGowan*, 282
F.3d 191, 198 (2d Cir. 2002).

conducted in bad faith. FreeEats also makes no allegations that the Indiana state court is incompetent to adjudicate the issues in this case because of bias, or that Indiana filed the state action based on a desire to harass or in bad faith. Accordingly, the first exception to the *Younger* abstention doctrine is not applicable in this case.

Second, we consider whether the plaintiff has demonstrated " 'an extraordinary pressing need for immediate federal equitable relief' " that, if not granted, will irreparably injure the plaintiff. *Moore*, 442 U.S. at 433 (quoting *Kugler*, 421 U.S. at124-25). In *Kugler*, the Supreme Court expounded on this second exception, noting that for it to apply, there (1) must be no state remedy available to meaningfully, timely, and adequately remedy the alleged constitutional violation; *and* (2) that the litigant will suffer "great and immediate" harm if the federal court does not intervene. *Kugler*, 421 U.S. at 124-25. *See also Trainor v. Hernandez*, 431 U.S. 434, 441-42, 442 n.7 (1977). Thus, to satisfy the first predicate of the "extraordinary circumstances" exception, FreeEats must show that there is no state remedy available to meaningfully, timely, and adequately remedy its alleged constitutional violations. The district court found that FreeEats made this showing, based upon the temporal proximity of the election and its conclusion that the state court was unlikely to resolve FreeEats' claims prior to election day. Specifically, the district court "conclude[d] that abstention is inappropriate because this case involves important federal issues that require urgent attention," the state action was "in its infant stages," and "the delays that have taken place in that matter to date make it unlikely that the state court will be able to address those claims prior to the general election."

Whether a fast-approaching election justifies refusing to abstain under the principles of *Younger* is an issue of first impression in this circuit.[9] We find guidance, however, in the Supreme Court's decision in *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987), in which the Court reiterated that "a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Id.* at 15. In this case, the district court observed that while the state court could provide a remedy to FreeEats, it could not do so prior to the election due to various procedural obstacles. This calls for an examination of the proceedings in the state court.

On September 26, 2006, eight days after Indiana filed its state court complaint, the original state court judge assigned to the matter recused herself. Prior to her recusal, the original state court judge had scheduled a hearing on Indiana's motion for a preliminary injunction for October 6, 2006, which was over one month prior to the election. Pursuant to Indiana state and local court rules, the original state court judge appointed a special judge to hear the state action. Three days before the hearing date, FreeEats' state court co-defendant, the Economic Freedom Fund,

---

[9] We did, however, touch on this issue in our order denying FreeEats' emergency motion for advancement of oral argument and expedited consideration of this appeal. *FreeEats.com, Inc. v. Indiana*, No. 06-3900 (7th Cir. Nov. 2, 2006) (order denying FreeEats' emergency motion for advancement of oral argument and expedited consideration) (per curiam). Specifically, we stated that "Indiana's statute was enacted 18 years ago, and emergency relief in a suit filed on the eve of an election is unwarranted." *Id.* (citing *Purcell v. Gonzalez*, ___ U.S. ___, 127 S. Ct. 5, 7 (2006)).

moved for a change of judge. The next day, and before the
state court had ruled on the change of judge motion,
FreeEats moved to continue the October 6, 2006, hearing
on Indiana's motion, and to stay the entire state court
proceeding pending the district court's resolution of its
own federal court motion for a preliminary injunction.
FreeEats also represented that it would not make any
more calls to Indiana telephone subscribers unless and
until it received a favorable ruling from the district court.
The day after that, October 5, 2006, which was one day
before oral arguments were scheduled on Indiana's motion,
the special judge accepted jurisdiction.[10] That same day,
the special judge granted FreeEats' motion to continue
the October 6, 2006, hearing, as well as the Economic
Freedom Fund's motion for a change of judge. A second
special judge accepted jurisdiction on November 1, 2006.
Five days later, and the day before the election, FreeEats
again moved to stay the state court proceedings, this time
until we resolve its appeal. On December 11, 2006, the
second special judge denied FreeEats' motion to stay the
state action, and the state action continues to date. Based
upon these facts, it is clear that the state court could
have, and would have, conducted a hearing on Indiana's
motion for a preliminary injunction prior to the election,
but for FreeEats' and the Economic Freedom Fund's
exercise of their procedural options to stay the hearing and
request a change of judge. While we do not express an
opinion regarding whether these procedural tactics were

---

[10] Under Indiana procedural rules, the special judge retained
emergency jurisdiction, including the power to adjudicate a
motion for a preliminary injunction, until the new judge
qualifies. *See* Ind. R. Tr. P. 79(O).

dilatory, they were undertaken at FreeEats' and its client's election with the obvious consequence of postponing any hearing until after the election. A party that exercises a state court's ordinary procedural processes to delay an action cannot then turn around and claim that because of that delay there is no state remedy available to meaningfully, timely, and adequately address its constitutional claim. To find otherwise would offend comity.

The district court also stated that its decision not to abstain was supported by the fact that the state action was "in its infant stage." We have recognized that " 'where state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of *Younger v. Harris* should apply in full force.' " *Forty One News, Inc.*, 491 F.3d at 666 (quoting *Hicks*, 422 U.S. at 349). Thus, in such a situation, "the district court must consider the progress of the federal action . . . and abstain if there have been no proceedings of substance on the merits . . . in the federal court." *Id.* (quotations and citations omitted). We have never addressed the inverted situation, however, where the district court would consider the progress of a first-filed state case for purposes of determining whether or not to apply the *Younger* abstention doctrine. If the first-filed state proceeding had only reached its preliminary stages, would the federal court still be obligated to abstain? Unless there are extraordinary circumstances as discussed above, the answer is yes. To do otherwise would be an affront to comity, as it would give district courts a free hand to wrest control over cases first filed in the state courts, so long as there have been no proceedings of substance on the merits in the state court. Accordingly,

the district court erred in considering the progress of the state action in its abstention analysis.

We also consider how the action reached the courts. In other words, who filed the action and when. FreeEats' litigation history evinces that it was no stranger to litigation by states seeking to enforce automated dialing machine statutes. In September 2004, two years before FreeEats filed this action, North Dakota sued FreeEats in its state courts seeking civil penalties for violating its automated dialing machine statute for calls that FreeEats admitted it made to North Dakota residents. *North Dakota v. FreeEats.com, Inc.*, 712 N.W.2d at 831. FreeEats litigated the North Dakota case all the way to the Supreme Court of North Dakota, and that court resolved the case in favor of North Dakota exactly five months *before* FreeEats filed this action in the district court. Accordingly, FreeEats was aware, or should have been aware, that a state might seek to enforce its automated dialing machine statute against it if it elected to make potentially offending calls. That brings us to the ADMS. Indiana enacted the ADMS in 1988, and it is highly similar to the North Dakota automated dialing machine statute. While the record does not disclose Indiana's previous enforcement history for the ADMS, there is no question that it was on the books both during the time that FreeEats was being sued by North Dakota, as well as when FreeEats contracted with the Economic Freedom Fund to make automatic dialer calls to Indiana telephone subscribers. If FreeEats had exercised a modicum of due diligence, and the record is silent on this point, it would have discovered the ADMS and its potential liability thereunder. FreeEats then could have filed suit for a declaratory judgment in either the state court or the district court well in advance of the

election, and prior to Indiana filing its action in state court. Thus, FreeEats had a state remedy available to meaningfully, timely, and adequately resolve its alleged constitutional claims, and one that would have avoided any implication of the *Younger* abstention doctrine. Unfortunately for FreeEats, it chose not to clarify this issue prior to initiating its calling program to Indiana telephone subscribers. We will not reward FreeEats with its desired federal forum merely because it decided to delay seeking injunctive and declaratory relief until the eve of the election, regardless of the harm it potentially could have suffered at that eleventh hour. Having found that FreeEats had a meaningful, timely, and adequate state remedy to resolve its alleged constitutional violation, we need not address whether it would have suffered "great and immediate" harm if the federal court did not intervene. Accordingly, the district court should have abstained pursuant to the principles of *Younger*.

We further note that elections, be they municipal, state, or federal, take place on a very regular basis. If we were to conclude that waiting until weeks before an election to file a suit seeking injunctive and declaratory relief from a state statute that was enacted eighteen years earlier gives rise to "extraordinary circumstances," then it would give license to the federal courts to run roughshod over the state courts' rights to adjudicate properly filed actions involving constitutional challenges that relate in some way to that election. That result would not respect comity, and thus it would violate the core principles of *Younger*.

Finally, upon finding that the district court should have abstained, "we are only left with the issue of how to abstain from these claims; by dismissing or merely

staying them." *Majors*, 149 F.3d at 714. The pivotal question in making this determination is whether any of the relief sought by the plaintiff in its federal action is unavailable in the state action. *See id.* ("The crucial fact in this determination is whether damages are available in the state proceeding. If they aren't, a stay is appropriate to avoid losing the plaintiff's claim to the statute of limitations without adjudicating it, but where they are available, dismissal is appropriate." (internal citations omitted)); *see also Green*, 281 F.3d at 667 ("A stay is appropriate when a plaintiff is foreclosed from bringing his damages claims in the state proceeding."). Here, FreeEats does not assert that the state court is incapable of providing any of the forms of relief for which it has prayed in the federal action. The Indiana state court clearly has the power to grant a preliminary injunction to FreeEats to prevent Indiana from enforcing the ADMS, as well as to grant FreeEats a declaratory judgment upon its finding that the ADMS is preempted by federal law or unconstitutional. We thus conclude that dismissal, rather than a stay of FreeEats' claims, was appropriate here. *See id.* (finding dismissal appropriate); see also *Majors*, 149 F.3d at 714 (same).

III.

The district court erred in declining to abstain from exercising jurisdiction over this case pursuant to the *Younger* abstention doctrine, because: Indiana filed its complaint in state court before FreeEats filed its complaint in this case; Indiana's state court complaint seeking to enforce the ADMS implicated important state interests; the Indiana courts offer an adequate opportunity for review of FreeEats' federal preemption and constitutional claims; and FreeEats did not demonstrate the existence of

any "exceptional circumstances" that would exempt this case from the principles of *Younger*. Accordingly, we REVERSE the district court's denial of Indiana's and the Indiana Attorney General's motion to dismiss, and we VACATE the district court's denial of FreeEats' motion for a preliminary injunction. This case is REMANDED with directions to DISMISS pursuant to the *Younger* abstention doctrine.

A true Copy:

       Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
